SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

## Eric Morillo v. Monmouth County Sheriff's Officers (A-88-13) (073978)

**Argued March 16, 2015 -- Decided July 13, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers the circumstances under which qualified immunity insulates law enforcement officers from claims of civil rights violations arising under 42 U.S.C.A. § 1983 (Section 1983) and the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2.

In December 2010, Monmouth County Sheriff's Officers Alexander Torres and Thomas Ruocco went to execute a child-support warrant on plaintiff Eric Morillo. When they arrived at the address listed on the warrant, which they later learned was plaintiff's mother's home, the officers discovered plaintiff sitting in the passenger seat of an idling car parked near the driveway and smoking what appeared to be marijuana. Ruocco opened the passenger-side door and smelled burnt marijuana coming from the vehicle. When Ruocco asked plaintiff if he had any more drugs in his possession, plaintiff said that he had a loaded weapon tucked in his waistband. Ruocco seized the weapon, removed plaintiff from the car, patted him down, and arrested him on the child-support warrant.

While riding to police headquarters, plaintiff told the officers that the gun was registered to him. He also said that he was involved in gang activity and was carrying the gun because he feared retaliation. Neither Ruocco nor Torres ever asked plaintiff whether the paperwork was in the house, but when they arrived at headquarters, they told their supervisor, Sergeant Steven Cooper, that plaintiff claimed to have such paperwork. Cooper called the prosecutor's office to seek advice as to whether plaintiff should be charged with a weapons offense. The assistant prosecutor told Cooper that it would be appropriate to charge him with second-degree unlawful possession of a handgun under N.J.S.A. § 2C:39-5(b)(1). In January 2011, after his bail was posted on the weapons charge, he was released from the county jail. On March 30, 2011, after receiving confirmation from the New Jersey State Police that plaintiff's handgun was properly registered, the weapons charge was dropped.

Plaintiff filed a complaint against Ruocco, Torres, and Cooper (collectively "defendants") alleging violations of 42 U.S.C.A. § 1983 (Section 1983) and the Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. He alleged that they violated his constitutional rights by wrongfully charging him with unlawful possession of a weapon, which led to his incarceration until bail was posted. Plaintiff filed a motion for summary judgment as to liability. Defendants filed a cross-motion for summary judgment, asserting qualified immunity and seeking dismissal of the action. The trial court denied defendants' motion for summary judgment, deeming it impermissible for plaintiff to be charged with unlawful possession of a weapon because the gun he carried was lawfully registered to him and he was at his present residence when he was found carrying the weapon. After several motions to stay the proceedings and motions for leave to appeal, the matter came before the Appellate Division, which affirmed the trial court's judgment. Both plaintiff and defendants sought leave to appeal to this Court. The Court denied plaintiff's motion for leave to appeal, but granted defendants' motion for leave to appeal the Appellate Division's judgment that affirmed the denial of summary judgment based on qualified immunity. 217 N.J. 585 (2014).

**HELD**: The civil rights causes of action against the officers should have been dismissed based on the affirmative defense of qualified immunity.

1. For purposes of analyzing the qualified-immunity defense advanced here, the Court does not differentiate between plaintiff's claims under 42 U.S.C.A. § 1983 and the CRA, New Jersey's analogue to Section 1983. Qualified immunity shields officials performing discretionary functions from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. This defense allows officials some breathing room to make reasonable, even if mistaken, judgments by protecting all but the plainly incompetent or those who knowingly violate the law. In New Jersey, the qualified-immunity doctrine is applied to civil rights claims brought against law enforcement officials engaged in their discretionary functions, including arresting or charging an individual based on probable cause to believe that a criminal offense has occurred. (pp. 14-16)

2. Whether an officer is entitled to qualified immunity is determined by a two-prong test. The first inquiry asks whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the challenged conduct violated a statutory or constitutional right. Second, the court must determine whether the right was clearly

established by determining whether a reasonable officer in the same situation would understand that his actions were unlawful. Law enforcement officers are not entitled to immunity if it is obvious that no reasonably competent officer would have concluded that a warrant should issue. Thus, when a plaintiff asserts that he or she was unlawfully arrested, an officer can defend such a claim by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence. (pp. 16-18)

3. The issue of qualified immunity is one that should be decided before trial by the court. If facts that are material to deciding that issue are disputed, the jury should decide those facts on special interrogatories. When no material historical or foundational facts are in dispute, or when they are and the jury decides those disputed facts pursuant to the above procedure, the trial judge must then decide the legal issue of whether probable cause existed and, if not, whether a reasonable police official could have believed in its existence. When probable cause is lacking and the trial judge is determining whether a reasonable law enforcement officer would have believed that probable cause to arrest or charge did exist, it is for the judge to decide whether the defendant has proven by a preponderance of the evidence that his or her actions were reasonable under the particular facts. (pp. 18-19)

4. Here, defendants' assertion of qualified immunity calls into question whether it was objectively reasonable for the defendant officers to have charged plaintiff with unlawful possession of a handgun under N.J.S.A. 2C:39-5(b)(1). Plaintiff claims that the statutory exemption from prosecution for that offense makes it clear that the officers had no reasonable basis to charge him with unlawful possession when he was carrying his lawfully registered gun while seated in a running car on property surrounding his mother's residence where he was living at the time. However, there is an element of ambiguity inherent in the exemption's sentence structure. It is not entirely clear whether the exemption was intended to encompass, for example, common areas within a multi-unit dwelling. Similarly, it is unclear whether it is intended to encompass carrying a weapon in the open areas surrounding a private residence where one may be staying but which is not owned or possessed by the individual. Plaintiff was staying/living at his mother's house at the time he was found outside the home carrying a loaded handgun concealed in the waistband of his pants. Neither the home nor the property was owned or possessed by plaintiff. The language of the statute is ambiguous as to its intended reach in these circumstances and case law does not help resolve the question. The majority of New Jersey case law that has touched on the circumstances in which the statutory exemption is applicable supports the view that the statute permits gun owners to carry firearms, without a carry permit, inside their residences. On the other hand, no case law suggests that the statute generally permits a gun owner to carry a firearm outside his or her residence on premises he or she neither owns nor possesses. (pp. 19-24)

5. The defendant officers' claim of qualified immunity depends on a determination of whether the circumstances support a conclusion that no reasonably competent officer would have concluded that a warrant should issue. First, the fact that most New Jersey case law applied the home-carry exemption to cases where the gun is carried inside the private portions of one's residence, and not to outside areas, indicates that the officers were not applying clearly established law. These officers confronted a question of uncertain application of the exemption to the unlawful possession statute, arguably taking it beyond the clearly established framework of our law. Second, these officers acted with restraint and prudence. They tried to act cautiously and could not dismiss the possibility that a chargeable weapons offense should be added to plaintiff's arrest on the child-support warrant. The officers on the scene sought guidance from their supervisor, and the supervisor sought advice from the prosecutor's office. The Court views these events in their totality and is not persuaded by plaintiff's effort to call into question the extent to which the supervisory officer emphasized to the assistant prosecutor that plaintiff had, in fact, been at his residence at the time that he was found outside with the loaded gun on his person. (pp. 24-26)

6. In sum, under the test for qualified immunity, the defendant officers confronted a question of uncertain application of the exemption to the unlawful possession statute. Further, under the standard of competence required for qualified immunity, it cannot fairly be said in this instance that no reasonably competent officer would have believed probable cause existed to go forward with an unlawful possession charge against plaintiff under these circumstances. Viewed in their totality, the officers' involvement in the circumstances that led to the filing of the unlawful possession charge against plaintiff does not rise to the level required to meet the standard for stripping these officers of the protection of qualified immunity. (pp. 27-29)

The judgment of the Appellate Division is **REVERSED.** The matter is **REMANDED** for dismissal of the Section 1983 and CRA claims against the defendant officers.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

ERIC MORILLO,

    Plaintiff-Respondent,

        v.

MONMOUTH COUNTY SHERIFF'S
OFFICER ALEXANDER TORRES,
MONMOUTH COUNTY SHERIFF'S
OFFICER THOMAS RUOCCO,
MONMOUTH COUNTY SHERIFF'S
OFFICE, and MONMOUTH COUNTY
SERGEANT STEVEN COOPER,

    Defendants-Appellants,

        and

OLD BRIDGE TOWNSHIP ASSISTANT
MUNICIPAL COURT ADMINISTRATOR
SUSAN BRUCHEZ, and OLD BRIDGE
TOWNSHIP MUNICIPAL COURT,

    Defendants.

        Argued March 16, 2015 – Decided July 13, 2015

        On appeal from the Superior Court, Appellate Division.

        John C. Connell argued the cause for appellants (Archer & Greiner, attorneys; Mr. Connell, Christine G. Hanlon, and Benjamin D. Morgan, on the briefs).

        Joel I. Rachmiel argued the cause for respondent.

    JUSTICE LaVECCHIA delivered the opinion of the Court.

    The doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations

when the officers are acting under color of law in the performance of official duties.  This protection extends to suits brought under 42 U.S.C.A. § 1983 and under New Jersey's analogue, the Civil Rights Act, N.J.S.A. 10:6-1 to -2.  As both federal and state case law on this immunity doctrine recognize, members of law enforcement must be permitted to perform their duties without being encumbered by the specter of being sued personally for damages, unless their performance is not objectively reasonable.  Thus, the defense's protection is denied only to officers who are plainly incompetent in the performance of their duties or who knowingly violate the law.

In this appeal, we must address whether, on the basis of qualified immunity, three police officers were entitled to dismissal of an action brought by plaintiff.  The action sought to impose personal liability on the officers for alleged civil rights violations arising from a charge brought against plaintiff for unlawful possession of a weapon under N.J.S.A. 2C:39-5(b)(1).  The charge was later administratively dismissed.

For the reasons expressed herein, we hold that the civil rights causes of action against the officers should have been dismissed based on the affirmative defense of qualified immunity that the officers asserted.  It cannot be said as a matter of law that no reasonably competent officer would have believed that probable cause existed to charge plaintiff with unlawful

2

possession of a weapon.  Under the facts and circumstances involved in charging plaintiff with a violation of N.J.S.A. 2C:39-5(b)(1), there was neither a knowing violation of law nor a transgression of the competence standard demanded of law enforcement officers for qualified immunity to provide a shield from personal liability for alleged civil rights violations arising from the performance of their duties.

The judgment of the Appellate Division is reversed.

I.

A.

Plaintiff was charged with unlawful possession of a handgun under N.J.S.A. 2C:39-5(b)(1), which provides:  "Any person who knowingly has in his possession any handgun, including any antique handgun, without first having obtained a permit to carry the same as provided in [N.J.S.A.] 2C:58-4,[1] is guilty of a crime of the second degree."  The next section of that chapter provides an exemption from prosecution for unlawful possession of a handgun, which states that

> [n]othing in subsections b., c. and d. of [N.J.S.A.] 2C:39-5 shall be construed to prevent a person keeping or carrying about his place of business, residence, premises or

---

[1] N.J.S.A. 2C:58-4 outlines the procedures and requirements involved in obtaining a permit to carry a handgun.  A permit to carry a handgun is different from the permits required to sell or purchase firearms in New Jersey.  See N.J.S.A. 2C:58-2 (describing license required for retail sale of firearms); N.J.S.A. 2C:58-3 (describing required permit to purchase handgun and identification card required to purchase firearm).

> other land owned or possessed by him, any
> <u>firearm</u>, or from carrying the same, in the
> manner specified in subsection g. of this
> section, from any place of purchase to his
> residence or place of business, between his
> dwelling and his place of business, between
> one place of business or residence and another
> when moving, or between his dwelling or place
> of business and place where such firearms are
> repaired, for the purpose of repair. For the
> purposes of this section, a place of business
> shall be deemed to be a fixed location.
>
> [<u>N.J.S.A.</u> 2C:39-6(e) (emphasis added).]

In this matter, we review the combined involvement of sheriff's officers and their supervisory officer, after soliciting advice from a representative of the county prosecutor's office, in the decision to charge plaintiff with a violation of <u>N.J.S.A.</u> 2C:39-5(b)(1). The relevant facts as contained in the summary judgment record are summarized as follows.

At about 8:30 p.m. on December 15, 2010, Monmouth County Sheriff's Officers Alexander Torres and Thomas Ruocco arrived at a Matawan address to execute a child-support warrant on plaintiff Eric Morillo. The address was the one listed on the warrant. While Torres went to knock on the front door, Ruocco went around the side of the home and discovered plaintiff sitting in an idling car parked toward the rear of the side driveway of the residential home at the listed address,[2] which,

---

[2] The home had a Matawan (Monmouth County) mailing address but was actually located in Old Bridge in Middlesex County. By

4

it turned out, was his mother's. Although the car's engine was running, its headlights were off. Other cars were also parked in the side area of the property.

As Ruocco approached the car, he observed plaintiff in the passenger seat smoking what appeared to Ruocco to be a marijuana "roach," described as being not a "full marijuana cigarette." Ruocco opened the passenger-side door. He stated that the smell of burnt marijuana emanated from the vehicle's interior.

When Ruocco asked plaintiff if he had any other drugs on him, plaintiff told Ruocco that he was carrying a loaded weapon tucked in the right side of the waistband of his pants. Ruocco ordered plaintiff and the person seated in the driver's seat to raise their hands to the car's ceiling. Ruocco seized the weapon and called Torres on his hand-held radio to come and assist. Plaintiff and his companion were removed from the vehicle and patted down. Plaintiff was arrested on the child-support warrant.

While still at the scene, Ruocco phoned his supervisor, Sergeant Steven Cooper, to alert him to the circumstances involved in executing the warrant and the seizure of the weapon. He advised Cooper that while he and Torres were executing the child-support warrant, they discovered plaintiff, carrying a

---

virtue of that distinction, the matter later became subject to Middlesex County's jurisdiction.

loaded handgun concealed in his waistband, smoking marijuana while seated inside a car, with its motor running, parked at the home.

Although Ruocco did not ask plaintiff at the scene whether he had a permit to carry the gun, while en route to police headquarters, plaintiff informed the officers that the handgun was registered to him and that he had "paperwork" for it. Plaintiff told the officers that he was involved in gang activity and was carrying the handgun because he feared retaliation. Plaintiff also told Ruocco that the home was his mother's and that he had lived in different places. That said, according to Ruocco, he assumed that plaintiff was living at the home at the time the warrant was executed because the officers found plaintiff there.

Under questioning, Ruocco and Torres admitted that they never asked plaintiff at the scene whether the firearm paperwork was in the house, but when they arrived at headquarters they told Sergeant Cooper that plaintiff claimed to have such paperwork. They also indicated that they were operating on the belief that the address at which plaintiff was found was the location where he was presently residing, essentially because it was the address listed for him for child-support purposes and the location where plaintiff was found when executing the warrant. The officers' confusion over whether to charge

6

plaintiff with unlawful possession arose as a result of the circumstances in which plaintiff was found with the loaded gun concealed in the waistband of his pants. As Cooper emphasized in his response to questioning, plaintiff was not found inside the house; he was located in the driveway portion of the property, in an idling car with its lights off. Cooper also cited the information plaintiff provided to the officers about being a gang member, that plaintiff said he feared retaliation, and that he was smoking marijuana at the time he was carrying the concealed weapon outside the house -- whether or not it was his mother's home and, at the time, his residence.

Sergeant Cooper telephoned a representative of the prosecutor's office, seeking advice whether, under the circumstances, plaintiff should be charged with a weapons offense. Cooper's initial inquiry to one assistant prosecutor resulted in his referral to another. He spoke ultimately, by telephone, with Assistant Prosecutor Sean Brennan, outside the presence of Ruocco and Torres.

Cooper informed Brennan that, during the execution of a child-support warrant issued for plaintiff, plaintiff was found in possession of a concealed, loaded handgun while seated inside an idling vehicle located at the warrant's address for plaintiff. Cooper relayed to Brennan the additional facts that the officers had represented: that plaintiff had revealed that

7

he was a gang member fearing retaliation, and that plaintiff had been smoking marijuana in the car in which he had been located. Brennan advised Cooper that plaintiff could be charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1), which provides: "Any person who knowingly has in his possession any handgun . . . without first having obtained a permit to carry the same . . . is guilty of a crime of the second degree." Plaintiff was so charged. The initial complaint charging plaintiff with that violation in Monmouth County was typed by Cooper and signed by Ruocco. That complaint was dismissed on the discovery that the home where plaintiff was found was actually located in Middlesex County. Torres signed the subsequently prepared complaint charging plaintiff in Middlesex County. Cooper, Ruocco, and Torres later prepared reports detailing their respective involvement in arresting and charging plaintiff.

Plaintiff posted bail on the child-support warrant, but he could not cover the bail set on the weapons charge. On January 14, 2011, plaintiff's family posted bail for him, and plaintiff was released from the Middlesex County jail.

On March 30, 2011, after receiving confirmation from the New Jersey State Police that plaintiff's handgun had been purchased with the proper registration, the weapons charge was dropped. In the prosecutor's report explaining the

administrative dismissal of the charge, the prosecutor wrote that plaintiff "was found on his own property with a handgun" and that plaintiff was the lawful owner of the handgun. Thus, the prosecutor dropped the charge based on an application of a statutory exemption to the unlawful-possession statute, which provides, in pertinent part: "Nothing in subsections b., c. and d. of [N.J.S.A.] 2C:39-5 shall be construed to prevent a person keeping or carrying about his place of business, residence, premises or other land owned or possessed by him, any firearm . . . ." N.J.S.A. 2C:39-6(e).

## B.

Plaintiff filed the instant complaint in the Law Division against Ruocco, Torres, and Cooper (collectively defendants) alleging violations of 42 U.S.C.A. § 1983 (Section 1983) and the Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. Plaintiff alleged, in pertinent part, that defendants violated his constitutional rights by unlawfully arresting him and charging him with unlawful possession of a weapon, which led to his incarceration until bail was posted.[3] Plaintiff filed a motion for summary judgment as to liability. Defendants filed a cross-motion for summary judgment, asserting qualified immunity and seeking dismissal of the action.

---

[3] Plaintiff asserted additional claims against defendants and other parties. None of those claims are before this Court.

9

The trial court denied defendants' motion for summary judgment.[4]  The court deemed it impermissible for plaintiff to be charged with unlawful possession of a weapon, essentially because the gun he carried was lawfully registered to him and he was at his present residence when he was found carrying the weapon.  According to the court, "the crime charged was legally impossible" and, thus, probable cause could not exist.  Further, the trial court found that defendants' actions were not objectively reasonable.  The court added that providing defendants with qualified immunity "would basically be tantamount to saying that there is per se qualified immunity[] if you contact a . . . prosecutor."

After several motions to stay the proceedings and motions for leave to appeal, the matter came before the Appellate Division, which affirmed the trial court's judgment.  Both plaintiff and defendants sought leave to appeal to this Court.

We granted defendants' motion for leave to appeal the Appellate Division's judgment that affirmed the denial of summary judgment based on qualified immunity.  217 N.J. 585 (2014).  We denied plaintiff's motion for leave to appeal the

---

[4] Plaintiff's motion for summary judgment was denied.  The Appellate Division affirmed that determination, following a remand by this Court to have the merits of both motions addressed.  We did not grant leave to appeal on the panel's affirmance of the denial of that motion, and accordingly do not address that motion.

10

Appellate Division's judgment that genuine issues of material fact were present.

II.

A.

Defendants argue that the doctrine of qualified immunity shields them from civil liability as a matter of law, emphasizing the "unproductive societal costs" that result from depriving law enforcement officers of that protection from personal suits for damages. Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). Defendants rely on the two-stage test laid out by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281-82 (2001), in which courts must determine: (1) whether the police officers' actions violated a constitutional right, viewed in the light most favorable to the plaintiff; and (2) whether reasonable police officers would find the conduct unlawful in the same situation.

Under the first prong of the Saucier test, defendants argue that they did not violate any constitutional right. Defendants assert that plaintiff cannot show that he was arrested without probable cause under the totality of the circumstances of plaintiff's arrest on the child-support warrant, purported gang affiliation, marijuana use, and concealment of his weapon while being outside the house. Defendants add that police officers

11

are not obligated to conduct legal analysis in the heat of the moment, and that the prosecutor's advice lent credence to the officers having probable cause. (Citing Sands v. McCormick, 502 F.3d 263, 269 (3d Cir. 2007)).

Under the second prong of the Saucier test, defendants argue that even if plaintiff's constitutional rights were violated, the officers acted in an objectively reasonable manner and officers who act reasonably but mistakenly are entitled to qualified immunity. Even if they were mistaken about probable cause, defendants assert that, under the totality of the circumstances, they nevertheless acted in an objectively reasonable manner in charging plaintiff with unlawful possession of a weapon after taking reasonable and prudent steps, including receiving a prosecutor's advice.

### B.

Plaintiff argues that the police officers fail both prongs of the Saucier test for application of qualified immunity. Under the first prong, plaintiff contends that his Second and Fourth Amendment rights were plainly violated when he was erroneously charged with unlawful possession of a weapon in spite of the clear language of N.J.S.A. 2C:39-6(e). Because of the plain language of that statutory exemption, plaintiff argues that nothing in the record could establish probable cause to charge plaintiff with a violation of N.J.S.A. 2C:39-5(b)(1).

12

Under the second prong of <u>Saucier</u>, plaintiff maintains that he was at his own home at the time of his arrest and, therefore, <u>N.J.S.A.</u> 2C:39-6(e) and subsequent case law reasonably give rise to the police officers' actual or imputed knowledge of the unlawfulness of the seizure of plaintiff's handgun from him while he was at his home. Plaintiff claims reliance on the Supreme Court's decisions in <u>District of Columbia v. Heller</u>, 554 <u>U.S.</u> 570, 128 <u>S. Ct.</u> 2783, 171 <u>L. Ed.</u> 2d 637 (2008), and <u>McDonald v. City of Chicago</u>, 561 <u>U.S.</u> 742, 130 <u>S. Ct.</u> 3020, 177 <u>L. Ed.</u> 2d 894 (2010), which extended the Second Amendment's right to self-defense to the home. Plaintiff also highlights the maxim that everyone is presumed to know the law, including the "reasonable" police officer.

Plaintiff additionally contends that police officers cannot escape civil liability by relying on prosecutorial advice, for such reliance must be objectively reasonable, citing <u>Kelly v. Borough of Carlisle</u>, 622 <u>F.</u>3d 248, 254-56 (3d Cir. 2010). According to plaintiff, Cooper acted in an objectively unreasonable manner because he failed to advise the prosecutor that the arrest occurred at plaintiff's home, despite acknowledging awareness of the "home carry" exception. Thus, plaintiff asserts that defendants are precluded from using prosecutorial reliance to escape their own incompetence.

III.

13

Plaintiff asserts a claim under 42 U.S.C.A. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

He brings a corollary claim under the CRA, New Jersey's analogue to a Section 1983 action. See N.J.S.A. 10:6-1 to -2; Gormley v. Wood-El, 218 N.J. 72, 97-98 (2014). For purposes of analyzing the qualified-immunity defense advanced in this matter, the examination for both is the same. See Gormley, supra, 218 N.J. at 113-15; Ramos v. Flowers, 429 N.J. Super. 13, 24 (App. Div. 2012) ("[T]he Legislature anticipated that New Jersey courts would apply the well-established law concerning the affirmative defense of qualified immunity in adjudicating damage claims under the [CRA]."). Accordingly, we do not differentiate between those claims for purposes of our examination of the asserted affirmative defense.

The doctrine of qualified immunity operates to shield "government officials performing discretionary functions generally . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

14

known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982) (citation omitted). The well-established defense of qualified immunity interposes a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials. See City & Cnty. of S.F. v. Sheehan, __ U.S. __, __, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d 856, 867 (2015) ("This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" (alteration in original) (quoting Ashcroft v. al-Kidd, __ U.S. __, __, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149, 1160 (2011))). The doctrine is well-recognized in federal law, see, e.g., id. at __, 135 S. Ct. at 1774, 191 L. Ed. 2d at 866-67, as well as in the law of New Jersey, see, e.g., Gormley, supra, 218 N.J. at 113.[5]

---

[5] Indeed, the doctrine of qualified immunity and its accompanying strong shield retain full vitality, as reinforced by recent United States Supreme Court case law. See, e.g., Sheehan, supra, __ U.S. at __, 135 S. Ct. at 1774, 191 L. Ed. 2d at 866-67 (reiterating that qualified immunity protects public officials from suit for violations of clearly established statutory or constitutional rights unless action was plainly incompetent or knowing violation of law); Plumhoff v. Rickard, __ U.S. __, __, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056, 1069 (2014) (same); Stanton v. Sims, __ U.S. __, __, 134 S. Ct. 3, 4-5, 187 L. Ed. 2d 341, 344 (2013) (same); al-Kidd, supra, __ U.S. at __, __, 131 S. Ct. at 2080, 2083, 179 L. Ed. 2d at 1155, 1159 (same).

15

In New Jersey, the qualified-immunity doctrine is applied, in accordance with the Harlow pronouncement, to civil rights claims brought against law enforcement officials engaged in their discretionary functions, including arresting or charging an individual based on probable cause to believe that a criminal offense has occurred. See Schneider v. Simonini, 163 N.J. 336, 353-54 (2000), cert. denied, 531 U.S. 1146, 121 S. Ct. 1083, 148 L. Ed. 2d 959 (2001); Connor v. Powell, 162 N.J. 397, 408-09, cert. denied, 530 U.S. 1216, 120 S. Ct. 2220, 147 L. Ed. 2d 251 (2000); Wildoner v. Borough of Ramsey, 162 N.J. 375, 386 (2000); Kirk v. City of Newark, 109 N.J. 173, 184 (1988).

Whether a police officer is entitled to qualified immunity is determined by application of a two-prong test. See Wood v. Moss, __ U.S. __, __, 134 S. Ct. 2056, 2066-67, 188 L. Ed. 2d 1039, 1051 (2014). The first inquiry asks whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury," show that the challenged conduct violated a statutory or constitutional right. See Saucier, supra, 533 U.S. at 201, 121 S. Ct. at 2156, 150 L. Ed. 2d at 281; Wood, supra, __ U.S. at __, 134 S. Ct. at 2067, 188 L. Ed. 2d at 1051. Second, the court must determine "whether the right was clearly established." Saucier, supra, 533 U.S. at 201, 121 S. Ct. at 2156, 150 L. Ed. 2d at 281. Courts reviewing qualified-immunity claims are free to address the two prongs in any order. See al-

16

Kidd, supra, __ U.S. at __, 131 S. Ct. at 2080, 179 L. Ed. 2d at 1155 ("[C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." (citing Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565, 576 (2009))).

The dispositive point in determining whether a right is clearly established is whether a reasonable officer in the same situation clearly would understand that his actions were unlawful. Saucier, supra, 533 U.S. at 202, 121 S. Ct. at 2156, 150 L. Ed. 2d at 282. "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" Plumhoff v. Rickard, __ U.S. __, __, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056, 1069 (2014) (quoting al-Kidd, supra, __ U.S. at __, 131 S. Ct. at 2083, 179 L. Ed. 2d at 1159).

Our decisional law on qualified immunity follows federal case law. As stated in our prior decisions, the doctrine "protects all officers 'but the plainly incompetent or those who knowingly violate the law.'" Connor, supra, 162 N.J. at 409 (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271, 278 (1986)). Law enforcement officers are not entitled to immunity "'if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" Wildoner, supra, 162

17

N.J. at 386 (quoting Malley, supra, 475 U.S. at 341, 106 S. Ct. at 1096, 89 L. Ed. 2d at 278).

Thus, when a plaintiff asserts that he or she was unlawfully arrested, a law enforcement officer can defend such a claim "by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence." Kirk, supra, 109 N.J. at 184 (citation omitted); see also Connor, supra, 162 N.J. at 408 (same); Wildoner, supra, 162 N.J. at 386 (same). "If officers of reasonable competence could disagree on the issue of probable cause, the doctrine of qualified immunity should be applied." Connor, supra, 162 N.J. at 409 (citing Malley, supra, 475 U.S. at 341, 106 S. Ct. at 1096, 89 L. Ed. 2d at 278).

Procedurally, the issue of qualified immunity is one that ordinarily should be decided well before trial, and a summary judgment motion is an appropriate vehicle for deciding that threshold question of immunity when raised. See Schneider, supra, 163 N.J. at 355-56. The issue is one for the court to determine. Id. at 359. That said, if "historical or foundational facts" that are material to deciding that issue are disputed, "the jury should decide those . . . facts on special interrogatories"; but, the jury's role is limited to "the who-what-when-where-why type of" fact issues. Ibid. (citation and

18

internal quotation marks omitted).  However, the jury does not decide the issue of immunity.  When no material historical or foundational facts are in dispute, or when they are and the jury decides those disputed facts pursuant to the above procedure, "the trial judge must then decide the legal issue of whether probable cause existed and, if not, whether a reasonable police official could have believed in its existence."  Id. at 360.

Importantly, when probable cause is lacking and the trial judge is determining whether a reasonable law enforcement officer would have believed that probable cause to arrest or charge did exist, it is for the judge to "decide whether the defendant has proven by a preponderance of the evidence that his or her actions were reasonable under the particular facts." Ibid.

We thus turn to review the trial court's decision, affirmed by the Appellate Division, denying defendants' motion for summary judgment based on qualified immunity.

IV.

Defendants' assertion of qualified immunity to plaintiff's cause of action calls into question whether it was objectively reasonable for the defendant officers to have charged plaintiff with unlawful possession of a handgun under N.J.S.A. 2C:39-5(b)(1).  Plaintiff claims that the statutory exemption from prosecution for that offense makes it abundantly clear that the

19

officers had no reasonable basis to charge him with unlawful possession when he was carrying his lawfully registered gun while seated in a running car on property surrounding his mother's residence where he was living at the time.  The exemption provides that

> [n]othing in subsections b., c. and d. of [N.J.S.A.] 2C:39-5 shall be construed to prevent a person <u>keeping or carrying about his place of business, residence, premises or other land owned or possessed by him, any firearm</u>, or from carrying the same, in the manner specified in subsection g. of this section, from any place of purchase to his residence or place of business, between his dwelling and his place of business, between one place of business or residence and another when moving, or between his dwelling or place of business and place where such firearms are repaired, for the purpose of repair.  For the purposes of this section, a place of business shall be deemed to be a fixed location.
>
> [N.J.S.A. 2C:39-6(e) (emphasis added).]

According to its plain language, the exemption applies to a gun carried (1) about a place of business and (2) about a residence.  However, the language is less than plainly clear when one considers the next portion of the sentence pertaining to keeping or carrying a weapon.  The phrase "premises or other land owned or possessed by him" is not perfectly clear as to its application.  After the word "premises," there is no comma, which would have indicated that "premises" was intended to be next in a list of places where one unequivocally could keep or carry a weapon.  Instead, like the next word, "land," the word

"premises" could be read to be modified by the subsequent description of being "owned or possessed by [the person keeping or carrying the weapon]."

The statute's grammatical structure can be read to mean that "premises" and "land" -- both more generic descriptions of areas than "residence" or "place of business" -- must be owned or possessed by the individual to whom a weapon is registered in order for that person to lawfully carry the weapon in such areas. There is an element of ambiguity inherent in that portion of the exemption's sentence structure. It is not entirely clear whether the exemption was intended to encompass, for example, common areas within a multi-unit dwelling, where one may have a right to be if one is residing in a unit in that dwelling, but which area technically is not possessed by that individual -- such as a basement laundry room. Similarly, it is not clear whether it is intended to encompass, for example, carrying a weapon in the open areas surrounding a private residence where one may be staying but which is not owned or possessed by the individual. The charge against plaintiff arose in such a setting.

Plaintiff was staying/living at his mother's house at the time he was found outside the home carrying a loaded handgun concealed in the waistband of his pants. Neither the home nor the property was owned or possessed by plaintiff. Giving all

21

inferences to plaintiff, when he was found carrying that loaded weapon in his waistband, he was sitting in a running car, in a side driveway, outside his mother's home. We cannot say that the language of the statute is without ambiguity as to its intended reach in these circumstances, and case law does not help resolve the question posed about the statute's application in these circumstances.

There is little case law interpreting or applying the statutory exemption in N.J.S.A. 2C:39-6(e). The pronouncements made by this Court clearly support that the exemption applies to possessing weapons inside one's dwelling or place of business. See, e.g., State v. Petties, 139 N.J. 310, 315 (1995) ("One may possess an unlicensed handgun at home." (citing N.J.S.A. 2C:39-6(e))); In re Preis, 118 N.J. 564, 568 (1990) ("Our laws draw careful lines between permission to possess a gun in one's home or place of business, N.J.S.A. 2C:39-6[(e)], and permission to carry a gun, N.J.S.A. 2C:39-6[(a)] and N.J.S.A. 2C:39-6[(c)]."); State v. Harmon, 104 N.J. 189, 198-99 (1986) ("A homeowner who possesses a gun in his home . . . does not violate N.J.S.A. 2C:39-5 because under N.J.S.A. 2C:39-6(e), he is not carrying it.").

The Appellate Division has referred to the exemption as applying to an individual's carrying a firearm within his or her home. See, e.g., State v. Navarro, 310 N.J. Super. 104, 108 n.1

22

(App. Div.) ("We note that a person may keep a handgun within his residence without obtaining a permit to carry a handgun . . . ." (citing N.J.S.A. 2C:39-6(e))), certif. denied, 156 N.J. 382 (1998); State v. Gomez, 246 N.J. Super. 209, 216 & n.1 (App. Div. 1991) (referring to N.J.S.A. 2C:39-6(e) when noting that trial court's instruction correctly informed jury that defendant possessing gun inside his apartment did not violate N.J.S.A. 2C:39-5(b), but that possessing gun outside his dwelling would violate that statute); cf. State v. Marques, 140 N.J. Super. 363, 366 (App. Div. 1976) (rejecting argument that college dormitory room qualified as dwelling house for purposes of exempting defendant from unlawful possession charge under predecessor statute to N.J.S.A. 2C:39-6(e)).

In Gomez, supra, 246 N.J. Super. at 211-12, a jury found the defendant guilty of murder and unlawful possession of a handgun after the defendant shot another man in a rented room in a boarding house. Evidence was presented that the defendant carried the handgun outside of his apartment after the shooting. Id. at 216 n.1. The court noted that "[t]he trial judge correctly instructed the jury that possession of the gun while in [the] defendant's apartment did not constitute a crime, but that carrying the weapon outside of the dwelling would violate N.J.S.A. 2C:39-5(b)." Ibid. (emphasis added).

Thus, the overwhelming majority of New Jersey case law that has touched on the circumstances in which the statutory exemption is applicable supports the view that the statute permits gun owners to carry firearms, without a carry permit, inside their residences. On the other hand, no case law suggests that the statute generally permits a gun owner to carry a firearm outside his or her residence on premises he or she neither owns nor possesses. Indeed, the Gomez panel implied the opposite: that carrying a firearm outside one's dwelling removed the gun owner from the protections of section 6(e), despite that the defendant, to whom that panel referred, was merely renting and did not, therefore, "own" or "possess" any "premises" or "land" on which he stepped after exiting his residence.

Against that backdrop to the unlawful possession of a weapon offense and the statutory exemption that pertains in certain circumstances, we consider the officers' claim to qualified immunity in this matter.

                                V.

The defendant officers' claim of qualified immunity depends on a single determination: whether the circumstances support a conclusion that "'no reasonably competent officer would have concluded that a warrant should issue.'" Wildoner, supra, 162 N.J. at 386 (quoting Malley, supra, 475 U.S. at 341, 106 S. Ct.

24

at 1096, 89 L. Ed. 2d at 278). That conclusion is not supported on this record, in our view, as a matter of law.

First, the statute's language leaves open to debate the intended reach of its exemption, and the scope of that exception remains unsettled by any interpretive decision by the courts. The fact that most New Jersey case law applied the home-carry exemption to cases where the gun is carried inside the private portions of one's residence, and not to outside areas, indicates that the officers were not applying "clearly established" law. Under the test for qualified immunity, these officers confronted a question of uncertain application of the exemption to the unlawful possession statute, arguably taking it beyond the "clearly established" framework of our law. See Saucier, supra, 533 U.S. at 202, 121 S. Ct. at 2156, 150 L. Ed. 2d at 282 (describing "dispositive inquiry in determining whether a right is clearly established [a]s whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

Second, these officers acted with restraint and prudence in the face of a confusing situation. They stated that they tried to act cautiously and could not dismiss the possibility that a chargeable weapons offense should be added to plaintiff's arrest on the child-support warrant. The sheriff's officers on the scene sought guidance from their supervisor, and the supervisor

25

sought advice from the prosecutor's office.  The officers' right to the benefit of qualified immunity does not hinge on the soundness of the prosecutor's advice.  See Kelly, supra, 622 F.3d at 255-56 ("[A] police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from . . . claims premised on a lack of probable cause.").

Third, we do not rely to any great extent on the involvement of legal counsel to insulate these officers from liability on the basis of qualified immunity.  Rather, we view these events in their totality.  Therefore, we are not persuaded by plaintiff's effort to call into question the extent to which the supervisory officer emphasized to the assistant prosecutor that plaintiff had, in fact, been at his residence at the time that he was found outside with the loaded gun on his person.  The prosecutor was informed that the inquiry arose from an encounter with an individual based on execution of a child-support warrant.  There was no suggestion that the event described was taking place anywhere other than the address for the person who was identified on the warrant.  Indeed, the officers, particularly Ruocco and Cooper, emphasized that they assumed plaintiff was residing at that home when the warrant was being executed.  In acting with caution before proceeding with an unlawful possession of a weapon charge, they were focused on

26

where plaintiff was with the gun, namely outside the home and in an idling car, how the loaded weapon was being carried (concealed in a waistband), and the additional circumstances of his being outside with the loaded weapon as told by plaintiff and observed by the officers.

In view of the lack of clarity and guidance available on the exemption's application generally, so long as the gun owner is not inside his or her dwelling or place of business, we cannot say that no reasonable officer could possibly have been led to believe that probable cause existed to charge plaintiff with unlawful possession of a weapon.  In these circumstances, plaintiff's possession of his weapon could be perceived as beyond the exemption's protection.  The statute is unclear as to how to treat premises or land if not owned or possessed by the person carrying a registered gun.  We note specifically that we do not resolve that issue in light of the posture of this case. Moreover, the situation here was complicated for the officers by the fact that the weapon indisputably was loaded with a round in the chamber, was concealed in plaintiff's waistband as he was seated in an idling car with its lights off and situated in a driveway to the residence, and plaintiff was expressing concern about gang retaliation.

In sum, under the test for qualified immunity, the defendant officers confronted a question of uncertain

27

application of the exemption to the unlawful possession statute. This was not a setting in which the application of the statutory exemption to unlawful possession was "clearly established" in the framework of our law.  See Saucier, supra, 533 U.S. at 202, 121 S. Ct. at 2156, 150 L. Ed. 2d at 282 (requiring indication that reasonable officer in same circumstances clearly would have known conduct was unlawful for "clearly established" test to be met).  Further, under the standard of competence required for qualified immunity, it cannot fairly be said in this instance that no reasonably competent officer would have believed probable cause existed to go forward with an unlawful possession charge against plaintiff under these circumstances.  "If officers of reasonable competence could disagree on the issue of probable cause, the doctrine of qualified immunity should be applied."  Connor, supra, 162 N.J. at 409 (citing Malley, supra, 475 U.S. at 341, 106 S. Ct. at 1096, 89 L. Ed. 2d at 278).

In short, law enforcement officials should not have to fear facing a ruinous civil lawsuit and substantial financial loss when acting reasonably in difficult circumstances and on uncertain legal terrain.  Accordingly, and for good reason, the qualified-immunity doctrine "protects all officers 'but the plainly incompetent or those who knowingly violate the law.'"  Ibid. (quoting Malley, supra, 475 U.S. at 341, 106 S. Ct. at 1096, 89 L. Ed. 2d at 278).  Neither description fairly

28

characterizes defendants' actions here.  The officers' actions defy characterization as "plainly incompetent" and there was no knowing violation of law.  Viewed in their totality, the officers' involvement in the circumstances that led to the filing of the unlawful possession charge against plaintiff does not rise to the level required to meet the standard for stripping these officers of the protection of qualified immunity.  Ibid.

VI.

The judgment of the Appellate Division is reversed and the matter remanded for dismissal of the Section 1983 and CRA claims against the defendant officers.


CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-88    SEPTEMBER TERM 2013

ON APPEAL FROM    Appellate Division, Superior Court

ERIC MORILLO,

       Plaintiff-Respondent,

              v.

MONMOUTH COUNTY SHERIFF'S
OFFICER ALEXANDER TORRES,
MONMOUTH COUNTY SHERIFF'S
OFFICER THOMAS RUOCCO,
MONMOUTH COUNTY SHERIFF'S
OFFICE, and MONMOUTH COUNTY
SERGEANT STEVEN COOPER,

       Defendants-Appellants,

              and

OLD BRIDGE TOWNSHIP ASSISTANT
MUNICIPAL COURT ADMINISTRATOR
SUSAN BRUCHEZ, and OLD BRIDGE
TOWNSHIP MUNICIPAL COURT,

       Defendants.


DECIDED          July 13, 2015
                 Chief Justice Rabner                    PRESIDING
OPINION BY     Justice LaVecchia
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |