**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2513-21

MARC ZITTER,

    Plaintiff-Respondent,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION, CHRISTOPHER
PETRUCCELLI, BRIAN
TOMLIN, JASON SNELLBAKER,
TYLER HAUSAMANN, RYAN
HARP, BRETT NICKLOW,
DOMINICK FRESCO, MARK
CHICKETANO, BRUCE
FRIEDMAN, DAVID CHANDA,
and ROBERT MARTIN,

    Defendants-Appellants.

_____

Argued June 20, 2022 – Decided July 12, 2022

Before Judges Fisher, Vernoia, and Firko.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2202-17.

Kevin J. Fleming, Deputy Attorney General, argued the cause for appellants (Matthew J. Platkin, Acting Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel and on the briefs; Kevin J. Fleming and Dom Stockton-Rossini, Deputy Attorneys General, on the briefs).

William F. Cook argued the cause for respondent (Brown & Connery LLP, attorneys; William F. Cook and Joseph R. Podraza, Jr. (Lamb McErlane PC), on the brief).

PER CURIAM

In 2013, officers of the New Jersey Department of Environmental Protection seized oysters plaintiff Marc Zitter was harvesting in waters in and about Cape May County; the Department dumped the oysters in prohibited waters, thereby preventing their sale. Plaintiff commenced a multi-count federal action under 42 U.S.C. § 1983, alleging defendants violated the Fourth, Fifth and Fourteenth Amendments to the federal constitutional, and violated state law as well. A district judge dismissed plaintiff's federal claims with prejudice and his state law claims without prejudice; the court of appeals affirmed that disposition. Plaintiff then began pursuing the state law claims asserted in an action in our courts that he also commenced in 2013. Finding questions of fact concerning defendants' claim of immunity and finding inappropriate the

application of the doctrine of collateral estoppel, the trial judge denied summary judgment. We granted leave to appeal and now reverse.

I

In May 2013, plaintiff was raising oysters by suspending them from a barge located in Dias Creek and by way of a "rack-and-bag"[1] operation in the Delaware Bay on grounds leased by Walt Canzonier (the lease location). Many years earlier, the Department had classified the Dias Creek location as "Prohibited," meaning shellfish intended for human consumption could not be legally harvested there. Upon learning of that classification, plaintiff began transferring his Dias Creek oysters to the lease location, whose waters were classified as "Approved" and appropriate for raising shellfish for human consumption. This transfer of oysters from "Prohibited" to "Approved" waters, however, required a permit for which plaintiff never applied.

On seven occasions between June 4 and July 8, 2013, plaintiff moved oysters from the Dias Creek location to the lease location and kept track of these movements on a dry erase board at the Dias Creek location. Plaintiff admitted transplanting at least 121 bags of oysters during that period, including as many

---

[1] The "rack-and-bag" process calls for cultivating oysters in plastic net bags suspended off the ground on metal racks so water can completely flow around the oysters.

A-2513-21

as seventy-six bags after a July 2, 2013 meeting, during which Department officials told plaintiff these transfers were not permitted. Plaintiff also admitted he eventually stopped tracking oyster transfers.

On September 27, 2013, defendant Christopher Petruccelli, a Department conservation officer, observed two of plaintiff's employees removing oysters from both the Dias Creek and lease locations and taking them to a shellfish dealership. Plaintiff advised Petruccelli he had sold approximately 3,000 oysters to various restaurants. After consulting with defendant Jason Snellbaker, a Department Lieutenant, Petruccelli instructed plaintiff to refrain from harvesting more oysters until the Department could complete an investigation into his practices.

On September 29, 2013, plaintiff met with Petruccelli and defendant Brian Tomlin, another Department officer, at the Dias Creek location during which plaintiff explained to the officers how he transferred oysters; plaintiff admitted he only tagged[2] one bag of oysters on each of the seven occasions he made

_____

[2] Shellfish harvesters are required by law to "affix to each container of shellfish at the harvest location a pre-printed tag" containing information such as the harvester's license number, the harvest date, the harvest time, and the harvest location. N.J.A.C. 7:12-8.5(a)-(b).

A-2513-21

transfers, stating "I haven't paid attention to where things are much anymore, because everything's been out there so long."

Petruccelli applied for and obtained a search warrant for the Dias Creek location and, on October 9, 2013, Petruccelli and Tomlin executed the warrant and seized: a dry erase board, four colored three-inch vinyl tags, and five receipts for vinyl tags. Petruccelli then applied for and obtained a second search warrant to seize oysters and equipment from the lease location. Between October 15 and 17, 2013, officers seized approximately 370,000 oysters, 310 mesh bags, and 769 plastic trays used to contain oysters from both the Dias Creek and lease locations. Officers dumped these seized oysters into waters deemed "Prohibited" by the Department to avoid their further harvesting or sale.

On October 24, 2013, Petruccelli issued two municipal court summons charging plaintiff with violations of state laws pertaining to the growing, harvesting, and selling of shellfish. The Department later withdrew those complaints, and plaintiff instituted two lawsuits against defendants: one in federal district court and the other – this matter – in the Law Division.[3] The federal district court ultimately dismissed all plaintiff's federal claims but

---

[3] The Department and defendant Bruce Friedman were not parties to the federal suit.

A-2513-21

declined to exercise supplemental jurisdiction over plaintiff's state law claims.[4] The district court's judgment was affirmed. Zitter v. Petruccelli, 744 Fed. Appx. 90 (3d Cir. 2018).

With the termination of the federal action, proceedings in the trial court here got underway in earnest. In his Law Division complaint and its amendments, plaintiff asserted: negligence; negligent supervision; promissory estoppel; conversion; tortious interference; and civil conspiracy. He also sought replevin and an evidentiary hearing pursuant to N.J.S.A. 58:24-1. After denial of defendants' motion to dismiss and after the parties engaged in extensive discovery, defendants moved for summary judgment based, in part, on the assertion that defendants were entitled to good faith immunity, N.J.S.A. 59:3-3, and, alternatively, that the state law claims were barred by the doctrine of

---

[4] The federal claims contained in plaintiff's first amended federal complaint were dismissed under Fed. R. Civ. P. 12(b)(6). Zitter v. Petruccelli, 213 F. Supp. 3d 698 (D.N.J. 2016). Plaintiff's claim under the Takings Clause was dismissed with prejudice, while the remainder of his claims were dismissed without prejudice. Id. at 705. Plaintiff's motion to reconsider the dismissal of his Takings Clause claim was denied. Zitter v. Petruccelli, No. 15-6488, 2017 U.S. Dist. LEXIS 69692 (D.N.J. May 8, 2017). Plaintiff filed a second amended complaint addressing the issues discussed by the district court in its initial dismissal. The federal claims contained in plaintiff's second amended federal complaint were also dismissed under Fed. R. Civ. P. 12(b)(6), in part, based on immunity grounds. Zitter v. Petruccelli, No. 15-6488, 2017 U.S. Dist. LEXIS 124724, at *16-19 (D.N.J. Aug. 7, 2017).

A-2513-21

collateral estoppel. The judge dismissed plaintiff's promissory estoppel claim and his request for an evidentiary hearing under N.J.S.A. 58:24-1 but denied summary judgment on all other claims. The judge found defendants had not sustained their claim of good faith immunity because he found no subjective evidence that the officers relied on existing caselaw or statutory law when seizing and relocating the oysters. The judge also determined the federal judgment should not be given preclusive effect.

We granted leave to appeal and now reverse because defendants were, on the existing record, entitled to immunity and because the doctrine of collateral estoppel bars plaintiff's state law claims.

II

Under New Jersey's Tort Claims Act,[5] "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. Good faith immunity under this provision is applicable if the public employee can show either that the complained-of conduct "was objectively reasonable" or, if not, that the public employee acted with subjective good faith. Fielder v. Stonack, 141 N.J. 101, 131-32 (1995).

---

[5] N.J.S.A. 59:1-1 to 12-3.

In determining objective reasonableness, we apply the same standard used in federal civil rights cases. Ibid. "Objective reasonableness will be established if the actor's conduct did not violate a clearly established constitutional or statutory right." N.E. for J.V. v. State Dep't of Child. and Fams., Div. of Youth & Fam. Servs., 449 N.J. Super. 379, 405 (App. Div. 2017).  In explaining the application of this concept, our Supreme Court has said that "[t]he dispositive point in determining whether a right is clearly established is whether a reasonable officer in the same situation clearly would understand that his actions were unlawful." Morillo v. Torres, 222 N.J. 104, 118 (2015). The Supreme Court of the United States has similarly held that "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." Plumhoff v. Rickard, 572 U.S. 765, 779 (2014).

In applying this concept, we need not look past our own shellfishing laws in recognizing that defendants did not violate plaintiff's clearly established rights. N.J.S.A. 58:24-3 charges the Department with "prohibit[ing] the taking of oysters . . . from a place . . . condemned by the [D]epartment" and with "prohibit[ing] the distribution, sale, offering for sale or having in possession of any such shellfish so taken, without a permit so to take, distribute, [or] sell." This statute unmistakably established that plaintiff had no right to harvest

8

oysters for commercial use at the Dias Creek location, no right to transfer those oysters to the lease location without a permit, and no right to possess any oysters taken from prohibited waters even if those oysters were eventually transferred to approved waters. Plaintiff, in fact, admits he did not apply for a permit to transfer the oysters from Dias Creek, did not hold a lease on the lease location, and did not have permission from the leaseholder to operate his "rack-and-bag" operation there. Prior to applying for the two search warrants that led to the seizures complained of, defendants knew of those facts and could reasonably determine that, to interdict a substantial risk to public health and safety as well as further violations of N.J.S.A. 58:24-3, plaintiff's oysters required seizure and relocation. Plaintiff does not, and indeed cannot, cite to a consensus of authority putting it beyond debate that he had the right to grow, harvest, transfer, or possess the oysters at issue in prohibited waters or move them from prohibited to approved waters. Morillo, 222 N.J. at 118; Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016). Because our laws indisputably demonstrated plaintiff had none of the rights he has asserted in this lawsuit, and because it is clear defendants acted to vindicate clearly established

legal proscriptions, the trial judge erred when he failed to extend to defendants the protections of good faith immunity.[6]

The trial judge's decision was based in part on his finding that shellfishing statutes do not give the Department or its officers authority to condemn or destroy contaminated oysters without first testing them to determine whether they are hazardous. The judge specifically relied on N.J.S.A. 58:24-2, which imposes on the Department the duty to "immediately condemn" any oyster bed "upon discovering that such place is subject to pollution or to any other condition which may render the oysters . . . dangerous to health." In applying this statute, the judge mistakenly overlooked the undisputed facts that the oysters were grown or harvested in waters already classified – since at least the 1960s – as "prohibited" or that they had been transferred from there to an approved area without permit as legally required. Those undisputed facts fully meet the condemnation requirement in N.J.S.A. 58:24-2.

---

[6] The federal district court also held that defendant officers were entitled to qualified immunity because it would not be clear to a reasonable officer "that [plaintiff] had a valid property interest in the [confiscated] oysters" because plaintiff's actions violated New Jersey's laws pertaining to the growing and harvesting of shellfish. Zitter, 2017 U.S. Dist. LEXIS 124724, at *15-16 (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Plaintiff contends this issue could not be summarily decided because defendants' claim of having acted in subjective good faith is a fact-sensitive inquiry best left to a jury. We disagree. As we have observed, the critical facts about the provenance of the seized oysters were undisputed and no rational factfinder could conclude that the individual defendants did not act in good faith in acting to prevent their sale to the public.

III

Reversal is also compelled by the application of the doctrine of collateral estoppel. This requires the application of federal principles. See Liquidation of Integrity Ins. Co., 214 N.J. 51, 67 (2013); Gannon v. Am. Home Prods., 211 N.J. 454, 469 (2012); Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 411-12 (1991). That is, we must consider whether the federal court's judgment should be given preclusive effect by applying the federal doctrine of collateral estoppel, which, not unlike this State's version, bars "relitigation of an issue that has already been litigated and resolved in a prior proceeding." Liquidation of Integrity Ins. Co., 214 N.J. at 67 (quoting Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998)). A party seeking the benefit of the federal doctrine of collateral estoppel must show:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated

in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

[Pleming, 142 F.3d at 1359; see also Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 209 (3d Cir. 2001).]

The Court in Liquidation of Integrity Ins. Co. recognized that the federal doctrine also requires that "the party against whom the doctrine is asserted must be the actual party in the prior litigation or in privity with an actual party," 214 N.J. at 67,[7] a circumstance not in doubt here since Marc Zitter was the plaintiff in both actions.

As defendants correctly argue, the objective reasonableness standard used by our courts to determine good faith immunity is identical to the standard adopted by the federal courts in ascertaining the existence of immunity in actions brought under 42 U.S.C. § 1983. See Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000); Fielder, 141 N.J. at 131-32; N.E. for J.V., 449 N.J.

---

[7] There is little to distinguish between our collateral estoppel doctrine and the doctrine applied in federal courts except, as the Supreme Court observed, "New Jersey will not apply collateral estoppel if it would be unfair to do so." Liquidation of Integrity Ins. Co., 214 N.J. at 67 (citing Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521-22 (2006)).

Super. at 404-05. This standard, as the Supreme Court explained, of "[r]el[ying] on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Like our federal colleagues, we agree that defendants were entitled to summary judgment on immunity grounds and, in applying the doctrine of collateral estoppel, the federal judgment entered against plaintiff should be given preclusive effect.

And, like plaintiff's federal claims, his state law claims are predicated on a purported property interest in the oysters seized and relocated by defendants, a matter that was briefed, argued, and litigated in federal district court and in the court of appeals. The district judge held plaintiff did not have a cognizable property interest in the oysters under N.J.S.A. 58:24-3 and, further, based on that statute, "[i]t would not be clear to a reasonable officer . . . in the situation [Petruccelli] confronted that [plaintiff] had a valid possessory interest in the oysters taken from prohibited waters." Zitter, 2017 U.S. Dist. LEXIS 124724, at *15-16. Though plaintiff has continued to argue he had a valid property interest in some of the oysters seized from the lease location because those waters were deemed "Approved" by the Department, the district judge noted in his opinion

A-2513-21

that all oysters eventually seized from the lease location were, at one point or another, transferred from "Prohibited" waters in violation of New Jersey law. Id. at *15. And plaintiff's argument that his state law claims, unlike the federal action, are "specifically based on the oysters that were grown in the Delaware Bay, not Dias Creek" is simply not accurate. See Zitter, 2017 U.S. Dist. LEXIS at *15 n. 11. The court of appeals affirmed the district judge's disposition of all plaintiff's federal claims, holding that plaintiff "never properly obtained an actionable property interest in the [oysters] harvested" because of his violations of N.J.S.A. 58:24-3. Zitter, 744 Fed. Appx. at 95. Those determinations were embodied in final judgments and are sufficient to trigger application of the doctrine of collateral estoppel.[8]

We further note that not one of the factors weighing against application – even when New Jersey's analog of the doctrine applies – is present. Allen v. V and A. Bros., Inc., 208 N.J. 114, 138 (2011). Plaintiff was entitled to – and sought and obtained – appellate review of the district court's judgment. The procedures available to plaintiff for the adjudication of his claims here are

_____

[8] Plaintiff forcefully argues that other oyster farmers received different treatment from the Department. This argument was also previously rejected when the district judge dismissed plaintiff's "equal protection–selective enforcement" claim, Zitter, 2017 U.S. Dist. LEXIS 124724 at *20-22, which the court of appeals expressly affirmed, Zitter, 744 Fed. Appx. at 96-97.

14

identical to those afforded in federal court. Plaintiff cannot legitimately argue he could not anticipate defendants would raise the issue of qualified immunity in both proceedings as the doctrine is equally applicable in both state and federal court. Finally, plaintiff obtained a full and fair adjudication of the issue of qualified immunity in federal court. To be sure, plaintiff's federal action was dismissed without discovery or a trial, but the district judge's ruling wasn't based on some misstatement in plaintiff's pleadings but on the assumption that what plaintiff had factually alleged was true. The fact that the district judge's adjudication of plaintiff's claims went against him is of no relevance in the application of the doctrine of collateral estoppel.

\* \* \*

In sum, we conclude the trial judge erred in denying defendants' summary judgment motion. Even when viewing the factual record in the light most favorable to plaintiff, as required by the <u>Brill</u> standard,[9] there is no doubt that defendants were entitled to good faith immunity in seizing and relocating shellfish in which plaintiff had no valid property interest pursuant to state law. The trial judge also erred by not applying the doctrine of collateral estoppel to

---

[9] <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995).

A-2513-21

bar plaintiff from relitigating the issue of qualified immunity in light of the decision reached in federal court.

Reversed and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2513-21