**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1800-19

COREY BLAND[1] and VIRGINIA
BLAND,

    Plaintiffs-Appellants,

v.

CITY OF NEWARK, CITY OF
NEWARK POLICE
DEPARTMENT, NEW JERSEY
DIVISION OF STATE POLICE,
STATE OF NEW JERSEY,
SERGEANT JAMES THOMPSON,
SERGEANT BRIAN MURPHY,
TROOPER II THOMAS
ESPINOZA, TROOPER II
WILLIAM LEGG, TROOPER
MIGUEL HOLGUIN, TROOPER
ANTHONY SARDANOPOLI,
TROOPER JOHN OLIVEIRA,
TROOPER STEPHEN RIEFLER,
DETECTIVE THOMAS
DELMAURO, DETECTIVE
BRIAN COSTA, DETECTIVE

---

[1] We note that Corey Bland passed away while this appeal was pending, and we entered a November 10, 2020 order permitting the substitution of his estate as a party in this case.

DAVID MARTINEZ, DETECTIVE RUBEN TORRES, SERGEANT THOMAS ROE, and OFFICER DANNY COSTA,

Defendants-Respondents.
_____

Argued November 1, 2021 – Decided November 16, 2021

Before Judges Fasciale and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2305-13.

Peter Ventrice argued the cause for appellants (Brause, Brause & Ventrice, LLC, and Lucas E. Phillips, Jr., attorneys; Peter Ventrice, on the briefs).

Gary S. Lipshutz, First Assistant Corporation Counsel, argued the cause for defendants Thomas del Mauro, David Martinez, and Ruben Torres (Kenyatta K. Stewart, Corporation Counsel, attorney; Gary S. Lipshutz and Azeem M. Chaudry, Assistant Corporation Counsel, on the brief).

Matthew Lynch, Deputy Attorney General, argued the cause for defendants James Thompson, Brian Murphy, William Legg, Miguel Holguin, Anthony Sardnopoli, John Oliveira, and Stephen Riefler (Andrew J. Bruck, Acting Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Matthew Lynch, on the brief).

Karen Thompson argued the cause for amicus curiae American Civil Liberties Union Foundation of New Jersey (American Civil Liberties Union Foundation of

New Jersey, attorneys; Karen Thompson, Alexander Shalom, and Jeanne LoCicero, on the brief).

PER CURIAM

Plaintiffs appeal from two December 6, 2019 orders granting defendants' James Thompson, Brian Murphy, Thomas Espinoza, William Legg, Miguel Holguin, Anthony Sardanopoli, John Oliveira, Stephen Riefler (the State defendants) and Thomas del Mauro, David Martinez, and Reuben Torres (the Newark defendants) (collectively defendants) motions for summary judgment. Plaintiffs argue that the motion judge erred by collaterally estopping plaintiffs from litigating the issue of qualified immunity under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-2, based on the decision rendered by the United States Court of Appeals for the Third Circuit in Bland v. City of Newark, 900 F.3d 77 (3d. Cir. 2018), and by dismissing plaintiffs' remaining state law claims.

In March 2013, plaintiffs filed a complaint in the Superior Court of Essex County alleging various state and federal claims arising from the shooting of Bland during and following a car chase. Defendants removed the action to federal court, and in June 2017, defendants moved for summary judgment, asserting they were entitled to qualified immunity. The district court judge denied defendants' motions for summary judgment and denied

3

defendants' motions to stay the trial. Bland, 900 F.3d at 82. Defendants filed a notice of appeal and an emergent request to stay the trial, which the Third Circuit granted. Ibid.

The Third Circuit reversed the denial of summary judgment in a published opinion. Id. at 87. The Third Circuit determined that the officers who fired at Bland's vehicle in Lincoln Park and the terminus of the car chase were entitled to qualified immunity as to plaintiffs' 42 U.S.C. § 1983 claims. Id. at 84-87.

In June 2019, the district court judge followed the Third Circuit's instructions and entered summary judgment in favor of defendants, declined to exercise supplemental jurisdiction over plaintiffs' remaining state law claims, and remanded the case to the Superior Court. The following November, defendants moved for summary judgment based on collateral estoppel. The motion judge granted defendants' motions for summary judgment, determining that plaintiffs were procedurally barred from relitigating the issue of qualified immunity, and dismissed plaintiffs' remaining state law claims with prejudice.

On appeal,[2] plaintiffs raise the following arguments for this court's consideration:

POINT I

THE THIRD CIRCUIT'S FINDING OF QUALIFIED IMMUNITY ON PLAINTIFFS' FEDERAL SECTION 1983 CLAIMS SHOULD NOT HAVE ENTITLED DEFENDANTS TO SUMMARY JUDGMENT ON PLAINTIFF[S'] CLAIMS UNDER THE [CRA] AND NEW JERSEY COMMON LAW WHERE THERE WERE GENUINE ISSUES OF MATERIAL FACT THAT, VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS, ESTABLISHED THAT DEFENDANTS' USE OF DEADLY FORCE WAS NOT OBJECTIVELY REASONABLE.

POINT II

PLAINTIFFS' CLAIMS BROUGHT UNDER THE [CRA] AND NEW JERSEY COMMON LAW WERE NOT BARRED BY RES JUDICATA OR BY COLLATERAL ESTOPPEL.

POINT III

DEFENDANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY.

---

[2] For the purposes of this appeal, we rely on the facts detailing the circumstances of the carjacking and ensuing car chase as set forth by the Third Circuit. See Bland, 900 F.3d at 80-82.

A-1800-19

<u>POINT IV</u>

DEFENDANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' NEW JERSEY STATE COMMON LAW CAUSES OF ACTION FOR ASSAULT AND BATTERY, NEGLIGENCE, OR PLAINTIFFS' PER QUOD CLAIM.

I.

Plaintiffs assert the motion judge erred by granting defendants' motions for summary judgment and by determining that defendants were entitled to qualified immunity based on the Third Circuit's decision in <u>Bland</u>. Plaintiffs argue that because the Third Circuit only addressed whether defendants were entitled to qualified immunity under Section 1983, our state courts "must perform [their] own analysis under the New Jersey State Constitution." The American Civil Liberties Union Foundation of New Jersey echoes plaintiffs' position, contending the motion judge was not bound by the Third Circuit's determination that the defendants were entitled to qualified immunity as to plaintiffs' CRA claim because it creates a separate state cause of action.

We review a grant of summary judgment using the same standard that governs the motion judge's decision. <u>RSI Bank v. Providence Mut. Fire Ins. Co.</u>, 234 N.J. 459, 472 (2018) (citing <u>Bhagat v. Bhagat</u>, 217 N.J. 22, 38 (2014)). Summary judgment is appropriate when "the pleadings, depositions,

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issues at to any material fact challenged and that the moving party is entitled to a judgment as a matter of law." R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). "When no issue of fact exists, and only a question of law remains, this [c]ourt affords no special deference to the legal determinations of the [motion judge]." RSI Bank, 234 N.J. at 472 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

Collateral estoppel, also referred to as issue preclusion, "bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." In re Liquidation of Integrity Ins. Co., 214 N.J. 51, 66 (2013) (internal citations omitted) (quoting N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 114 (2011)); see Doe v. Hesketh, 828 F.3d 159, 171-74 (3d Cir. 2016). Collateral estoppel arises "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (1982)). The result is "the determination is conclusive in a

A-1800-19

subsequent action between the parties, whether on the same or a different claim." Ibid. (quoting Restatement (Second) of Judgments § 27).

Our Court has explained that "'[i]n general, the binding effect of a judgment is determined by the law of the jurisdiction that rendered it,' and that this rule applies with equal force when considering the effect to be given to a federal court judgment in a state court proceeding." Gannon v. Am. Homes Prods., Inc., 211 N.J. 454, 469 (2012) (quoting Watkins v. Resort Int'l Hotel & Casino, Inc., 124 N.J. 398, 411 (1991)). Federal law and New Jersey law have "almost identical" requirements to establish collateral estoppel. Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30, 290 F.3d 567, 573 n.10 (3d Cir. 2002). The Third Circuit's collateral estoppel doctrine required that a party demonstrate that

> (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.
>
> [Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 247-48 (3d Cir. 2010) (quoting Szehinskyj v. Att'y Gen. of U.S., 432 F.3d 253, 255 (3d Cir. 2005)).][3]

---

[3] To successfully assert collateral estoppel in New Jersey, a party asserting the bar must demonstrate that:

A party may establish that an issue is "identical" under the first prong by demonstrating "that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." Suppan v. Dadonna, 203 F.3d 228, 233 (3d. Cir. 2000) (quoting Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4425 at 253 (1981)).

A federal court's decision not to exercise supplemental jurisdiction over state law claims does not impede the application of collateral estoppel. See Tarus v. Borough of Pine Hill, 189 N.J. 497, 521 (2007) (noting that despite the district court judge dismissing a plaintiff's state-law claims "without prejudice" after dismissing the plaintiff's federal claims, a plaintiff was

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Winters, 212 N.J. at 85 (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006)).]

9

"estopped from relitigating his contention that defendants lacked probable cause because that issue was actually determined in a prior action") (internal quotation marks omitted).

This case concerns the Third Circuit's grant of qualified immunity to defendants. "Qualified immunity is a doctrine that shields government officials from a suit for civil damages when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gormley v. Wood-El, 218 N.J. 72, 113 (2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This doctrine provides immunity from suit and balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Ibid. (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

To resolve the question of whether a party is entitled to qualified immunity at summary judgment, a judge must determine: "(1) whether the evidence, viewed in the light most favorable to the plaintiff, establishes that the official violated the plaintiff's constitutional or statutory rights, and (2) whether the right allegedly violated was 'clearly established' at the time of the

10

officer's actions."  Baskin v. Martinez, 243 N.J. 112, 128 (2020) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).  Judges have discretion in choosing which prong to address first.  Morillo v. Torres, 222 N.J. 104, 118 (2015); Pearson, 555 U.S. at 236.

"For purposes of analyzing the qualified-immunity defense . . . the examination for [Section 1983 and the CRA] is the same."  Morillo, 222 N.J. at 116.  This is because our Legislature "anticipated that New Jersey courts would apply the well-established law concerning the affirmative defense of qualified immunity in adjudicating damage claims under the [CRA]."  Ibid. (alteration in original) (quoting Ramos v. Flowers, 429 N.J. Super. 13, 24 (App. Div. 2012)).

The Third Circuit held that defendants were entitled to qualified immunity as to plaintiffs' Section 1983 claims, reversing the district court and remanding with an order to grant summary judgment to defendants.  Bland, 900 F.3d at 87.  The Third Circuit determined that as to the events that transpired at Lincoln Park, the State defendants were entitled to qualified immunity because they were reasonable in their belief that Bland was armed, that Bland posed a serious risk to himself and others because of his driving,

11

and that they did not violate Bland's clearly established constitutional rights by firing their weapons. Id. at 84-85.

The Third Circuit also determined that as to the events that transpired at the terminus, the Newark defendants were entitled to qualified immunity because they reasonably believed Bland was armed, Bland continued to pose a serious risk through his driving, and he threatened to kill the officers after he crashed and as the officers approached his vehicle. Id. at 85-86. Plaintiffs failed to identify any "cases with similar facts that, in 2011, would have 'put every reasonable offic[er] on notice' that using deadly force in such a situation violated clearly established constitutional rights." Id. at 86 (alteration in original) (quoting Fields v. City of Philadelphia, 862 F.3d 353, 361 (3d. Cir. 2017)). And further, the Third Circuit noted that even "accepting . . . the truth of [plaintiffs'] assertions regarding the [car's] immobility and the officers' ability to see Bland's hands, [its] conclusion remains the same." Ibid.

Torrez and Martinez, who arrived on the scene late and began shooting, were also entitled to qualified immunity because plaintiffs failed to present "caselaw demonstrating that [they] . . . violated a clearly established right by joining in the chaotic scene and discharging their weapons." Ibid. The Third Circuit noted that in a recent decision, "the [Supreme] Court granted qualified

12

immunity to an officer who arrived late to an armed confrontation between multiple officers and individuals" and, upon one of the civilians firing their weapon at the officers, the late-arriving officer returned fire without warning, killing another individual. Ibid. (citing White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam)). The Third Circuit further observed that

> [i]n reversing the denial of qualified immunity, the [Supreme] Court stated that "[c]learly established federal law does not prohibit a reasonable officer who arrives late to an ongoing police action in circumstances like [in White] from assuming that proper procedures . . . have already been followed," and that "[n]o settled Fourth Amendment principle requires that officer to second-guess the earlier steps already taken by his or her fellow officers."
>
> [Id. at 87 (third and fifth alterations in original) (quoting White, 137 S. Ct. at 551).]

The Third Circuit concluded that because there is no controlling law to the contrary, Torrez and Martinez were entitled to qualified immunity. Ibid.

We conclude that collateral estoppel is appropriate in this case as a result of the Third Circuit's decision in Bland. The CRA claim raised before the motion judge is identical to the issue now raised because, as previously noted, our courts analyze qualified immunity under the CRA in the same fashion that federal courts analyze qualified immunity under Section 1983. Morillo, 222 N.J. at 116; see Suppan, 203 F.3d at 233. Resolving defendants' qualified

13

immunity defense was necessary to the Third Circuit's decision in Bland, as qualified immunity renders defendants immune from suit as to those claims. Finally, collateral estoppel is being asserted against plaintiffs, who were parties to the federal action and had a full and fair opportunity to litigate the issue of qualified immunity. All the elements of collateral estoppel apply to the present action, and we therefore agree with the motion judge that plaintiffs are barred from relitigating the issue of qualified immunity.

II.

Having concluded that plaintiffs are collaterally estopped from relitigating whether defendants are entitled to qualified immunity, we now turn to plaintiffs' remaining arguments.

Plaintiffs argue that defendants are not entitled to qualified immunity under the CRA because our Court has previously interpreted the protections of Article I, Paragraph 7 of the New Jersey Constitution more broadly than the protections afforded by the Fourth Amendment. Plaintiff provides several examples of our Court taking a more expansive view of our State Constitution's protections as compared to the United States Constitution. See, e.g., State v. Pierce, 136 N.J. 184, 208-09 (1994) (rejecting a blanket rule permitting warrantless automobile searches incident to all arrests); State v.

A-1800-19

Hempele, 120 N.J. 182, 215 (1990) (establishing a reasonable expectation of privacy in garbage left curbside under our State Constitution); State v. Novembrino, 105 N.J. 95, 157-58 (1987) (refusing to adopt the good-faith exception to the exclusionary rule under our State Constitution); State v. Hunt, 91 N.J. 338, 344-47 (1982) (establishing a reasonable expectation of privacy in telephone toll billing records); State v. Alston, 88 N.J. 211, 233-35 (1981) (expanding the criteria for standing to challenge the validity of a search under our State Constitution); State v. Johnson, 68 N.J. 349, 354 (1975) (requiring further criteria to demonstrate the validity of a non-custodial consent to a search under our State Constitution).

We emphasize that an official's entitlement to qualified immunity is analyzed the same under federal and New Jersey law. See Morillo, 222 N.J. at 107-08. The Third Circuit determined that defendants were entitled to qualified immunity under the same standard that governs our courts, and we agree with that conclusion.

Plaintiffs argue Baskin demonstrates that our Court has a "more expansive view of constitutional protections that must be afforded to plaintiffs in excessive use of deadly force cases." But unlike the present case, the Court in Baskin addressed the issue of qualified immunity without a preceding

federal court decision determining defendants were entitled to qualified immunity. See 243 N.J. at 125 (noting that the issue before the Court was "whether [a detective] was entitled to qualified immunity based on the summary judgment record"). Here, the federal courts have resolved the issue of qualified immunity, and as previously noted, plaintiffs are estopped from relitigating the issue in state court. See In re Liquidation of Integrity Ins. Co., 214 N.J. at 66.

Plaintiffs argue that the Supreme Court's decision in Tennessee v. Garner, 471 U.S. 1 (1985), established that the defendant's conduct violated a clearly established constitutional right that officers may not shoot a fleeing unarmed suspect. But the Third Circuit rejected plaintiffs' reliance on Garner, noting that Garner "'lay[s] out excessive-force principles at only a general level' and 'do[es] not by [itself] create clearly established law outside an obvious case,'" Bland, 900 F.3d at 85 (alterations in original) (quoting White, 137 S. Ct. at 552). And as to whether this is an "obvious case" contemplated by the Supreme Court, the Third Circuit explained that the present case is "quite different from the one presented in Garner, where the officer pursued and shot a nondangerous suspect in the back of the head, even though the

officer was 'reasonably sure' the suspect was unarmed." Ibid. (quoting Garner, 471 U.S. at 3-4).

Plaintiffs also argue the motion judge erred by finding that defendants acted in good faith and granting summary judgment as to the assault and battery and negligence claims. Plaintiffs assert that because the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, claims turn on whether the defendants' actions were reasonable, the claims must be submitted to the jury.

"A defendant's entitlement to qualified immunity based on objectively reasonable conduct 'is a question of law to be decided [as] early in the proceedings as possible, preferably on a properly supported motion for summary judgment or dismissal.'" N.E. for J.V. v. N.J. Div. of Youth & Family Servs., 449 N.J. Super. 379, 404 (App. Div. 2017) (alteration in original) (quoting Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000)). Public officials are afforded immunity from suit under the TCA when they "act[] in good faith in the execution of enforcement of any law." N.J.S.A. 59:3-3. We consider "[t]he same standard of objective reasonableness that applies in Section 1983 actions" to determine whether a public official acted in good faith under the TCA. Wildoner, 162 N.J. at 387. A public employee acts with objective reasonableness "if the actor's conduct did not violate a clearly

established constitutional or statutory right." N.E., 449 N.J. Super. at 405 (citing Gormley, 218 N.J. at 113).

Again, the Third Circuit determined that defendants' actions both at Lincoln Park and the terminus were reasonable and that they did not violate a clearly established constitutional right. Bland, 900 F.3d at 84-87. As a result, the motion judge properly dismissed plaintiffs' assault and battery claim, as well as plaintiffs' negligence claim. See Canico v. Hurtado, 144 N.J. 361, 366 (1996) (explaining that negligence is insufficient to overcome an officer's showing of good faith to pierce qualified immunity under N.J.S.A. 59:3-3).

Because the motion judge properly dismissed plaintiffs' CRA, assault and battery, and negligence claims, we agree that plaintiffs' per quod claim was properly dismissed as moot. See Kibble v. Weeks Dredging & Constr. Co., 161 N.J. 178, 190 (1990) (noting that "a per quod claim is derivative of the injured spouse's personal injury cause of action").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION