SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Hamid Harris v. City of Newark (A-59-20) (085028)**

**Argued November 30, 2021 -- Decided March 30, 2022**

**JUSTICE PATTERSON, writing for a unanimous Court.**

In this appeal, the Court reviews the Appellate Division's order dismissing the notice of appeal filed by defendants the City of Newark, Detective Donald Stabile, and Police Officer Angel Romero following the trial court's denial of their motion for summary judgment, in which defendants asserted qualified immunity as a defense to plaintiff Hamid Harris's claims brought under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. Defendants contend that the trial court's order denying summary judgment was a legal determination and should therefore be deemed appealable as of right, in keeping with both New Jersey appellate practice and federal law.

Plaintiff alleges that Stabile, a Newark Police Department detective, falsely accused him of four armed robberies that were committed in Newark in January 2015 and unlawfully arrested him in connection with those robberies based on an improperly issued arrest warrant. After the charges against plaintiff were dismissed, he filed this action. He asserted, as relevant here, NJCRA claims against Stabile for false arrest, false imprisonment, and malicious prosecution and an NJCRA claim against Stabile and Romero for civil rights conspiracy. Defendants asserted the defense of qualified immunity to those claims and moved for summary judgment.

The trial court rejected defendants' claim. It reasoned that because Stabile did not have probable cause to arrest plaintiff, and because Stabile's belief that plaintiff committed the robberies was objectively unreasonable, defendants were not entitled to qualified immunity.

Defendants filed a notice of appeal, asserting that Rule 2:2-3(a)(3) authorized them to appeal as of right the trial court's decision denying qualified immunity. They also moved for leave to file an interlocutory appeal pursuant to Rule 2:5-6. The Appellate Division ruled that "[t]he appeal is interlocutory as it is not from a final order" and dismissed defendants' notice of appeal. The appellate court also denied defendants' motion for leave to appeal. The Court granted certification. 246 N.J. 231 (2021).

1

**HELD:** The trial court's order in this case was a decision premised on factual findings as well as legal conclusions, not an exclusively legal determination. A trial court's order rejecting as a matter of law a claim of qualified immunity should not be designated as a final order appealable as of right under Rule 2:2-3(a), and federal law does not require the contrary result. In an NJCRA action, a defendant seeking to challenge a trial court's order denying qualified immunity prior to final judgment must proceed by motion for leave to file an interlocutory appeal in accordance with Rules 2:2-4 and 2:5-6.

1. The NJCRA provides a remedy for deprivation of or interference with federal civil rights and substantive rights guaranteed by New Jersey's Constitution and laws. See N.J.S.A. 10:6-2(c). Qualified immunity operates to shield government officials performing discretionary functions generally from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Generally, application of the defense of qualified immunity is a legal question for the court rather than the jury that should be raised before trial. Case law, however, recognizes an exception to the rule that qualified immunity issues are legal issues to be decided by the court when the case involves disputed issues of fact. (pp. 10-12)

2. Here, the trial court's denial of summary judgment was premised on factual disputes as well as the court's legal conclusions. It was not an exclusively legal determination. The court identified factual disputes regarding plaintiff's false arrest and false imprisonment civil rights claims and witnesses' identifications of plaintiff, and the court stated that those factual disputes precluded summary judgment on the issue of qualified immunity. (pp. 13-14)

3. The Court nevertheless considers the issue raised in this appeal: whether a trial court's purely legal determination denying qualified immunity should be appealable as of right under Rule 2:2-3(a). The court rules governing New Jersey appellate practice generally draw a sharp distinction between final judgments appealable as of right and interlocutory orders that may be challenged by motion for leave to appeal governed by the "interest of justice" standard. Rule 2:2-3(a)(3), however, authorizes an appeal as of right to the Appellate Division in such cases as are provided by law, and lists a group of orders that, although technically interlocutory, are appealable as final judgments. The Court reviews three decisions in which it diverged from the general policy against piecemeal determinations to deem specific categories of interlocutory orders final for purposes of appeal. See Moon v. Warren Haven Nursing Home, 182 N.J. 507 (2005); Wein v. Morris, 194 N.J. 364, (2008); GMAC v. Pittella, 205 N.J. 572 (2011). In those decisions, the Court considered such factors as the impact of an immediate right to appeal on the litigation between the parties, the burdens imposed on the parties, the language and legislative purpose of the governing statute, the prospect of substantial prejudice to parties absent an

2

appeal as of right, and uniformity in appellate procedure as applied to similar categories of trial court orders. (pp. 14-19)

4. Several of those factors inform the Court's decision in this appeal. First, a motion for leave to appeal pursuant to Rules 2:2-4 and 2:5-6 provides a meaningful opportunity for interlocutory appellate review and protects the public entity's interest in avoiding trial costs and potential liability. Second, in contrast to the legislative goals of the tort claims and arbitration statutes reviewed in Moon, Wein, and GMAC, the Legislature's purpose in enacting the NJCRA would not be advanced by appeal as of right. Third, the NJCRA does not prescribe appellate review of some orders and deny appellate review of other orders, and so uniformity in the application of laws is not a factor here. Fourth, an appeal as of right of the trial court's qualified immunity decision would not resolve this litigation, given plaintiff's tort claims. Here, the Court perceives no reason to depart from the general policy in favor of restrained appellate review of issues relating to matters still before the trial court to avoid piecemeal litigation. The Court declines to add legal determinations denying the defense of qualified immunity to the narrow class of interlocutory orders subject to direct appeal under Rule 2:2-3(a). (pp. 19-21)

5. The Court next considers defendants' contention that Rule 2:2-3(a) should be conformed to federal law by adopting the collateral order doctrine that governs appellate practice in federal civil rights actions. Under United States Supreme Court case law, a state may adopt or reject the collateral order doctrine even in actions brought in state court under federal law, and a state is clearly free to adopt or reject that doctrine in state court actions premised on state civil rights statutes such as the NJCRA. The Court views New Jersey's current appellate procedure to effectively balance the interests of the parties and promote judicial economy in NJCRA actions and declines to adopt the collateral order doctrine for such claims. (pp. 21-27)

6. The Court also disagrees with defendants' contention that Rule 2:2-3(a), as applied to this appeal, is preempted by federal law. Rule 2:2-3(a) is clearly a neutral state procedural rule, and it does not determine the outcome of this appeal, let alone raise the specter of inconsistent dispositions of civil rights claims in state and federal court. See Johnson v. Fankell, 520 U.S. 911, 918-23 (1997). The Appellate Division has the authority to grant interlocutory review in the interest of justice, Rule 2:2-4, and the appellate court can and should review qualified immunity decisions on an expedited basis where parties seeking to appeal demonstrate a "meritorious basis" for such review, GMAC, 205 N.J. at 585. (pp. 27-28)

**AFFIRMED and REMANDED to the trial court for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.**

3

Hamid Harris,

Plaintiff-Respondent,

v.

City of Newark, Newark Police
Department, Detective Donald
Stabile, Police Officer Angel
Romero, John Does 1-10, ABC
Public Entities 1-10, et al.,

Defendant-Appellants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| November 30, 2021 | March 30, 2022 |

Emilia Perez, Assistant Corporation Counsel, argued the
cause for appellants (Kenyatta K. Stewart, Corporation
Counsel, City of Newark-Department of Law, attorneys;
Wilson D. Antoine, Assistant Corporation Counsel, of
counsel and on the briefs).

Brooke M. Barnett argued the cause for respondent
(BMB Law Firm, attorneys; Brooke M. Barnett, on the
briefs).

Angela Cai, Assistant Attorney General, argued the cause
for amicus curiae Attorney General of New Jersey
(Andrew J. Bruck, Acting Attorney General, attorney;

Angela Cai and Melissa H. Raksa, Assistant Attorneys General, of counsel and on the brief, and Matthew J. Lynch and Eric Intriago, Deputy Attorneys General, on the brief).

Robert F. Renaud argued the cause for amici curiae New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys (Renaud DeAppolonio, attorneys; Robert F. Renaud, on the brief).

Karen Thompson argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Karen Thompson, Alexander Shalom, and Jeanne LoCicero, on the brief).

J. Remy Green submitted a brief on behalf of amicus curiae National Police Accountability Project (Cohen & Green, and Pawar Law, attorneys; J. Remy Green, on the brief, and Lauren Bonds, of the Kansas and Texas bars, admitted pro hac vice, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

The doctrine of qualified immunity "shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties," unless the officers' "performance is not objectively reasonable." Morillo v. Torres, 222 N.J. 104, 107-08 (2015). Qualified immunity can be asserted as a defense against actions brought under the New Jersey Civil Rights Act (NJCRA), N.J.S.A.

10:6-1 to -2, and federal causes of action for a violation of civil rights under 42 U.S.C. § 1983. See Morillo, 222 N.J. at 107-08.

In this appeal, we review the Appellate Division's order dismissing the notice of appeal filed by defendants the City of Newark, Detective Donald Stabile, and Police Officer Angel Romero following the trial court's denial of their motion for summary judgment, in which defendants asserted qualified immunity as a defense to plaintiff Hamid Harris's civil rights claims. Defendants contend that the trial court's order denying summary judgment was a legal determination and should therefore be deemed appealable as of right under Rule 2:2-3(a)(3), in keeping with both New Jersey appellate practice and federal law.

We view the trial court's order in this case to be a decision premised on factual findings as well as legal conclusions, not an exclusively legal determination. We conclude that a trial court's order rejecting as a matter of law a claim of qualified immunity should not be designated as a final order appealable as of right under Rule 2:2-3(a), and that federal law does not require the contrary result. In an NJCRA action, a defendant seeking to challenge a trial court's order denying qualified immunity prior to final judgment must proceed by motion for leave to file an interlocutory appeal in accordance with Rules 2:2-4 and 2:5-6.

3

Accordingly, we affirm the Appellate Division's order dismissing defendants' notice of appeal and remand this matter to the trial court for further proceedings.

I.

A.

Plaintiff alleges that Stabile, a Newark Police Department detective, falsely accused him of four armed robberies that were committed in Newark in January 2015 and unlawfully arrested him in connection with those robberies based on an improperly issued arrest warrant.

After the charges against plaintiff were dismissed, he filed this action against defendants. In his amended complaint, plaintiff asserted NJCRA claims against Stabile for false arrest, false imprisonment, and malicious prosecution; an NJCRA claim against Stabile and Romero for civil rights conspiracy; a claim against all defendants for unlawful search and seizure based on the Fourth Amendment to the United States Constitution and the NJCRA; a common-law claim against all defendants for intentional infliction of emotional distress; and a common-law claim against the City of Newark for negligent hiring, supervision, training, and retention of police officers based in part on a theory of respondeat superior. Defendants asserted the defense of qualified immunity to plaintiff's claims under the NJCRA.

4

Defendants moved for summary judgment dismissing plaintiff's claims. After the parties completed discovery, the trial court granted in part and denied in part defendants' motion. The court dismissed plaintiff's claims under the Fourth Amendment and the NJCRA for unlawful search and seizure. It also dismissed plaintiff's negligent hiring, supervision, training, and retention claims against the City of Newark to the extent that those claims were based on a theory of respondeat superior.

The trial court rejected defendants' claim that they were entitled to summary judgment based on qualified immunity as to plaintiff's NJCRA claims for false arrest, false imprisonment, malicious prosecution, and conspiracy. It reasoned that because Stabile did not have probable cause to arrest plaintiff, and because Stabile's belief that plaintiff committed the robberies was objectively unreasonable, defendants were not entitled to qualified immunity. The trial court also denied the City of Newark's motion for summary judgment as to plaintiff's negligent hiring, supervision, training, and retention claims, to the extent that those claims were not based on a theory of respondeat superior.

Pursuant to Rule 4:49-3, defendants moved for reconsideration of the trial court's decision denying in part their summary judgment claims. In a written opinion, the trial court denied the motion for reconsideration.

5

B.

Defendants filed a notice of appeal, asserting that Rule 2:2-3(a)(3) authorized them to appeal as of right the trial court's decision denying qualified immunity. They also moved for leave to file an interlocutory appeal pursuant to Rule 2:5-6.

By Order dated September 25, 2020, the Appellate Division ruled that "[t]he appeal is interlocutory as it is not from a final order" and dismissed defendants' notice of appeal. The appellate court also denied defendants' motion for leave to appeal.

C.

We granted defendants' petition for certification. 246 N.J. 231 (2021).[1] We also granted amicus curiae status to the Attorney General; the New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys, jointly represented; the American Civil Liberties Union of New Jersey; and the National Police Accountability Project.

---

[1] In addition to filing a petition for certification, defendants moved for leave to appeal under Rule 2:5-6.

II.

A.

Defendants urge us to hold that the trial court's decision denying qualified immunity as a matter of law was a legal determination that should be viewed as final for purposes of Rule 2:2-3(a)(3). They argue that it would be inconsistent with our decision in Moon v. Warren Haven Nursing Home, 182 N.J. 507, 516-18 (2005), to rule that an order denying qualified immunity is not appealable as of right. Defendants contend that because a federal district court's legal determination denying qualified immunity is appealable as final under 28 U.S.C. § 1291, state court orders denying qualified immunity as a defense to NJCRA claims should also be appealable as of right pursuant to the collateral order doctrine. Defendants assert that a ruling denying an appeal as of right in the setting of this appeal would violate the principle of neutrality prescribed in Johnson v. Fankell, 520 U.S. 911, 918 (1997), and that such a ruling would be preempted by federal law.

B.

Plaintiff contends that the trial court's denial of summary judgment on the issue of qualified immunity was not a purely legal determination, but was premised on both legal and factual grounds. He distinguishes this appeal from our decision in Moon on the ground that factual disputes precluded summary

7

judgment in this case. Plaintiff states that in light of the judicial policy against piecemeal review of trial court decisions, an appeal as of right is ordinarily unavailable to a litigant unless the challenged determination is final as to all issues and all parties, and he urges that we refrain from creating an additional exception to that principle for orders denying qualified immunity. He asserts that New Jersey law should continue to treat such decisions as interlocutory orders that may be challenged prior to final judgment only by motion for leave to appeal.

C.

Amicus curiae the Attorney General asserts that, absent a factual dispute that requires a jury determination, we should permit appeals as of right from a denial of qualified immunity, absolute immunity, sovereign immunity, or statutory immunity because those immunities shield public employees and public entities from the burden of defending against civil rights claims as well as relieving those entities from potential liability. The Attorney General argues that allowing direct appeals from purely legal determinations denying qualified immunity would align New Jersey appellate practice with federal law and the decisions of other states' highest courts.

D.

Amici curiae New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys urge that we follow federal law and allow appeals as of right from decisions denying qualified immunity pursuant to Rule 2:2-3(a)(3). Amici curiae assert in the alternative that we should hold that motions for leave to appeal such decisions should be granted as a matter of course under Rule 2:2-4 because immediate appeal of qualified immunity orders is in the interest of justice and may prevent irreparable harm.

E.

Amicus curiae the American Civil Liberties Union of New Jersey argues that because the trial court's summary judgment decision was not an exclusively legal determination, the federal collateral order doctrine is irrelevant to this case. Amicus asserts that even if the collateral order doctrine were to govern New Jersey appellate procedure, that doctrine would not warrant an appeal as of right in this case.

F.

Amicus curiae National Police Accountability Project asserts that a rule allowing appeals as of right from decisions denying qualified immunity would prejudice plaintiffs and contravene the goals of civil rights litigation against police officers.

9

III.

A.

42 U.S.C. § 1983 prescribes a federal cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a "person who [acts] under color of any statute, ordinance, regulation, custom, or usage, of any State."

When it enacted the NJCRA in 2004, the Legislature sought to "provid[e] the citizens of New Jersey with a State remedy for deprivation of or interference with the civil rights of an individual." Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014) (quoting S. Judiciary Comm. Statement to S. 1158 (May 6, 2004)); see also Gormley v. Wood-El, 218 N.J. 72, 97 (2014) ("Section 1983 applies only to deprivations of federal rights, whereas N.J.S.A. 10:6-1 to -2 applies not only to federal rights but also to substantive rights guaranteed by New Jersey's Constitution and laws.").

The NJCRA provides that

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting

10

under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

"[Q]ualified immunity operates to shield 'government officials performing discretionary functions generally . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Morillo, 222 N.J. at 116 (omission in original) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The defense "interposes a significant hurdle for plaintiffs seeking to recover for asserted violations of civil rights at the hands of law-enforcement officials." Ibid.

A court's determination whether a law enforcement officer is entitled to assert the defense of qualified immunity in summary judgment motions is governed by a two-pronged test: first, the "court must determine whether, '[t]aken in the light most favorable to the party asserting the injury,' the facts alleged 'show that the challenged conduct violated a statutory or constitutional right'"; and second, the court "must determine 'whether the right was clearly established.'" Baskin v. Martinez, 243 N.J. 112, 139-40 (2020) (alteration in original) (quoting Morillo, 222 N.J. at 117); see also Brown v. State, 230 N.J. 84, 98 (2017).

11

"The interpretation given to parallel provisions of [42 U.S.C. § 1983] may provide guidance in construing our Civil Rights Act." Tumpson v. Farina, 218 N.J. 450, 474 (2014). New Jersey's "qualified immunity doctrine tracks the federal standard." Brown, 230 N.J. at 98.

"Generally, 'application of the defense of qualified immunity is a legal question for the court rather than the jury' that should be raised before trial." Baskin, 243 N.J. at 139 (quoting Brown, 230 N.J. at 98-99); see also Brown, 230 N.J. at 99 (recognizing that "[q]ualified immunity relieves an eligible defendant from the burden of trial," and acknowledging "the importance of resolving immunity questions at the earliest stage in litigation" (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). A motion for summary judgment "is an appropriate vehicle for deciding [the] threshold question of immunity when raised." Baskin, 243 N.J. at 139 (quoting Morillo, 222 N.J. at 119).

Our case law, however, recognizes an exception to the rule that qualified immunity issues are legal issues to be decided by the court "when the case involves disputed issues of fact." Brown, 230 N.J. at 99. In that setting, "the case may be submitted to the jury to determine 'the who-what-when-where-why type of historical fact issues,' after which the trial judge may incorporate those findings in determining whether qualified immunity applies." Ibid. (quoting Schneider v. Simonini, 163 N.J. 336, 359 (2000)).

12

B.

We consider the question whether the trial court's order denying defendants' summary judgment motion on the issue of qualified immunity should be appealable as of right pursuant to Rule 2:2-3(a)(3).

1.

We concur with plaintiff that the trial court's denial of summary judgment was premised on factual disputes as well as the court's legal conclusions, and that it was not an exclusively legal determination.

In the portion of the trial court's oral opinion on summary judgment that addressed qualified immunity, the court ruled that the warrant issued for plaintiff's arrest was not supported by probable cause and that a reasonable officer in Stabile's position would not have believed, based on the available evidence, that plaintiff had committed the January 2015 robberies. In that regard, the trial court appeared to decide the question of qualified immunity as a matter of law. However, the court also cited factual disputes regarding witnesses' identifications of plaintiff as a perpetrator of the robberies and the question whether police officers discovered a firearm in plaintiff's bedroom before or after plaintiff's arrest.

In its written opinion denying defendants' motion for reconsideration, the trial court confirmed that its determination was based in part on genuine

issues of material fact precluding summary judgment under Rule 4:46-2. The court identified factual disputes regarding plaintiff's false arrest and false imprisonment civil rights claims and witnesses' identifications of plaintiff, and the court stated that those factual disputes precluded summary judgment on the issue of qualified immunity. In short, the trial court's ruling was not an exclusively legal determination.

2.

Notwithstanding that conclusion, we consider the issue raised in this appeal: whether a trial court's purely legal determination denying qualified immunity should be appealable as of right.

We first address defendants' argument that Rule 2:2-3(a) implicitly recognizes a right to appeal such a determination.

The court rules governing New Jersey appellate practice generally draw a sharp distinction between final judgments appealable as of right to the Appellate Division and interlocutory orders that may be challenged by motion for leave to appeal governed by the "interest of justice" standard. See R. 2:2-3(a); R. 2:2-4; R. 2:5-6. Rule 2:2-3(a)(3), however, authorizes an appeal as of right to the Appellate Division "in such cases as are provided by law," and "lists a group of orders that, although technically interlocutory, are appealable as final judgments for reasons of public policy and expedition of judicial

14

administration." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.1 on <u>R.</u> 2:2-3(a)(3) (2021). Those orders

> include those referred to by <u>R.</u> 3:28-6(c) (order enrolling defendant into the pretrial intervention program over the objection of the prosecutor), <u>R.</u> 3:26-3 (material witness order), <u>R.</u> 4:42-2 (certification of interlocutory order), <u>R.</u> 4:53-1 (order appointing statutory or liquidating receiver), <u>R.</u> 5:8-6 (final custody determination in bifurcated family action), and <u>R.</u> 5:10-9 (order on preliminary hearing in adoption action). An order granting or denying a motion to extend the time to file a notice of tort claim pursuant to N.J.S.A. 59:8-9, whether entered in the cause or by a separate action, and any order either compelling arbitration, whether the action is dismissed or stayed, or denying arbitration shall also be deemed a final judgment of the court for appeal purposes.
>
> [<u>R.</u> 2:2-3(a).]

<u>Rule</u> 2:2-3(a)'s enumeration of the categories of orders deemed appealable as of right "is not exhaustive." <u>Moon</u>, 182 N.J. at 517 (citing Pressler, <u>Current N.J. Court Rules</u>, cmt. on <u>R.</u> 2:2-4 (2005)).

In three decisions, we have decided whether specific categories of orders that would otherwise be deemed interlocutory should be considered final for purposes of appeal.

In <u>Moon</u>, we considered whether a trial court order granting a plaintiff's motion to file a late notice of claim under N.J.S.A. 59:8-9, a provision of the

15

Tort Claims Act, should be treated as final and appealable as of right. 182 N.J. at 511-15. "First, and perhaps most fundamentally," we noted that the disputed "order does not dispose of all issues as to all parties, but merely permits the litigation to proceed," and we viewed that factor to favor a decision denying an appeal as of right. Id. at 511-12. Second, we found no special justification "to disregard the well-established policy" against piecemeal litigation. Id. at 513. Third, we viewed the policy behind the Tort Claims Act's notice requirement -- prompt notification to a public entity of a potential claim so that the entity can investigate, defend, and settle that claim -- to weigh against an appeal as of right. Id. at 514. Fourth, we invoked California court rulings addressing analogous orders under the California Tort Claims Act, a statute that served as a model for our Tort Claims Act, and concluded that California courts would view the order at issue in Moon to be interlocutory. Id. at 514-15. Fifth, we stated that "situations in which a party will be substantially prejudiced if an immediate appeal is not allowed," such as final custody determinations, preliminary adoption orders, and orders enrolling criminal defendants in pretrial intervention, favor providing an appeal as of right. Id. at 516-17. Applying those factors, we concluded "that the order granting leave to file a late notice of claim is interlocutory and not final." Id. at 515.

16

Notwithstanding that ruling, we recognized that two "countervailing considerations" -- the potential reduction of the financial burden on a public entity if the entity is allowed an immediate appeal and the overall purpose of the Tort Claims Act to effect a limited waiver of sovereign immunity -- warranted referral of the issue to the Civil Practice Committee for further consideration. Id. at 515-16. We later adopted the Civil Practice Committee's recommendation that orders granting or denying leave to file a late notice of tort claim under N.J.S.A. 59:8-9 should be deemed final, and we amended the court rule. See R. 2:2-3(a)(3).

In two decisions that followed Moon, we addressed the appealability of orders concerning the arbitration of disputes. In Wein v. Morris, we considered whether an order compelling arbitration and staying the parties' litigation was appealable as of right. 194 N.J. 364, 377-80 (2008). We noted that the appeal provision of the Uniform Arbitration Act, enacted shortly after the events that gave rise to Wein, provided for immediate appellate review of several types of arbitration orders but contained "no express provision for an appeal from an order compelling arbitration and staying the judicial proceeding." Id. at 380 (discussing N.J.S.A. 2A:23B-28). We stated that we considered "it appropriate to deem an order compelling arbitration a final judgment appealable as of right," a change we determined would "provide

17

uniformity, promote judicial economy, and assist the speedy resolution of disputes." Ibid.

Following Wein, we held in GMAC v. Pittella that "an order compelling arbitration as to one or more, but not all, claims and parties" would also be appealable as of right. 205 N.J. 572, 574 (2011). We reasoned that "reference to arbitration, unlike most interlocutory orders, terminates the role of the court altogether" and that "[t]he policy behind Wein applies irrespective of whether other claims or parties remain in the trial court." Id. at 586. We held that Rule 2:2-3(a) should "be further amended to permit appeals as of right from all orders permitting or denying arbitration," and we referred the matter to the Civil Practice Committee. Id. at 586-87. The court rule was amended pursuant to our decision. See R. 2:2-3(a)(3).

Thus, in the notice-of-tort-claim and arbitration settings, we diverged from our general policy against piecemeal determinations to deem specific categories of interlocutory orders final for purposes of appeal. GMAC, 205 N.J. at 586-87; Wein, 194 N.J. at 380; Moon, 182 N.J. at 511-15. In those decisions, we considered such factors as the impact of an immediate right to appeal on the litigation between the parties, the burdens imposed on the parties, the language and legislative purpose of the governing statute, the prospect of substantial prejudice to parties absent an appeal as of right, and

18

uniformity in appellate procedure as applied to similar categories of trial court orders. See Wein, 194 N.J. at 380; Moon, 182 N.J. at 511-15.

Several of those factors inform our decision in this appeal. First, a motion for leave to appeal pursuant to Rules 2:2-4 and 2:5-6 provides a meaningful opportunity for interlocutory appellate review. See GMAC, 205 N.J. at 585 ("[A]ppellate courts should, and do, review interlocutory orders when a litigant shows a meritorious basis for so doing."). That review is expedited to minimize prejudice and delay. See Pressler & Verniero, cmt. 1 to R. 2:5-6 ("All appeals on leave granted are to be expedited."). A meritless NJCRA claim can be dismissed on motion for leave to appeal, thus protecting the public entity's interest in avoiding trial costs and potential liability.

Second, in contrast to the legislative goals of the tort claims and arbitration statutes reviewed in Moon, Wein, and GMAC, the Legislature's purpose in enacting the NJCRA -- to provide a remedy for deprivation of or interference with civil rights -- would not be advanced by appeal as of right. See N.J.S.A. 10:6-1 to -2; S. Judiciary Comm. Statement to S. No. 1558. To the contrary, a ruling deeming orders denying qualified immunity final and appealable as of right would delay NJCRA cases, thus undermining the statute's goal.

19

Third, the NJCRA does not prescribe appellate review of some orders and deny appellate review of other orders, as did the arbitration statute reviewed in <u>Wein</u>. Accordingly, uniformity in the application of laws is not a factor here. <u>Compare</u> N.J.S.A. 10:6-1 to -2 (providing no interlocutory review), <u>with</u> N.J.S.A. 2A:24-1 to -11 (providing for an immediate appeal based on whether the trial court decides to stay or dismiss the action pending arbitration).

Fourth, an appeal as of right of the trial court's qualified immunity decision would not resolve this litigation. By virtue of plaintiff's tort claims, to which the defense of qualified immunity does not apply, the parties would be required to incur the expense of trial even if the defendants were to prevail on the issue of qualified immunity.

We perceive no reason to depart in this case from our general policy in favor of "restrained appellate review of issues relating to matters still before the trial court" to avoid piecemeal litigation. <u>Moon</u>, 182 N.J. at 510; <u>see also</u> <u>Vitanza v. James</u>, 397 N.J. Super. 516, 517-18 (App. Div. 2008) (noting the importance of avoiding piecemeal litigation); <u>House of Fire Christian Church v. Zoning Bd. of Adjustment of Clifton</u>, 379 N.J. Super. 526, 531 (App. Div. 2005) (same). We decline to add legal determinations denying the defense of

qualified immunity to the narrow class of interlocutory orders deemed final and subject to direct appeal under Rule 2:2-3(a).

3.

We next consider defendants' contention that we should conform Rule 2:2-3(a) to federal law by adopting the collateral order doctrine that governs appellate practice in federal civil rights actions, and that federal preemption principles mandate appeals as of right from legal determinations denying qualified immunity under the NJCRA.

Federal appellate procedure prescribes that the United States Courts of Appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. An exception to that general requirement of finality for appellate review is the collateral order doctrine, under which a district court order is appealable if it is "within 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Mitchell v. Forsyth, 472 U.S. 511, 524-25 (1985) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)); see also Lozano v. New Jersey, 9 F.4th 239, 244 (3d Cir. 2021) (applying the collateral

21

order doctrine to review a summary judgment determination denying qualified immunity that raised only a legal issue in an action brought in federal court under 42 U.S.C. § 1983).

In Mitchell, the United States Supreme Court held that exclusively legal determinations denying qualified immunity in claims under 42 U.S.C. § 1983 are appealable as of right under the collateral order doctrine. 472 U.S. at 526-27. There, the issue on appeal was "a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." Id. at 528 n.9.

The Supreme Court further explained the collateral order doctrine in Fankell. 520 U.S. at 916-23. There, the petitioners challenged an Idaho rule of appellate procedure that required an order to be "final" in order to be appealable, thus barring them from appealing an interlocutory order denying qualified immunity in a civil rights action brought under 42 U.S.C. § 1983. Ibid. On appeal, the petitioners relied on two arguments: the contention that Idaho was required to follow the collateral order doctrine and "follow the federal construction of a 'final decision,'" id. at 916; and the assertion that 42 U.S.C. § 1983 preempted the Idaho appellate rule, id. at 918-23.

The Supreme Court rejected the petitioners' contention that federal law required Idaho to adopt the collateral order doctrine in cases brought under 42

22

U.S.C. § 1983. Id. at 916. The Court noted that the collateral order doctrine is an application of 28 U.S.C. § 1291, a statute that governs only federal appeals. Id. at 917. It stated that although some states have elected to adopt "a similar 'collateral order' exception" in appeals from decisions denying qualified immunity in civil rights cases under 42 U.S.C. § 1983, it had "never suggested that federal law compelled them to do so." Ibid. The Supreme Court made clear that states are free to adopt -- or to decline to adopt -- the collateral order doctrine in such settings.[2] Ibid.

In Fankell, the Supreme Court also addressed the question of whether federal preemption principles required a state court adjudicating a claim under 42 U.S.C. § 1983 to authorize an appeal as of right from an order denying a summary judgment motion premised on qualified immunity. Id. at 918-23. It rejected the petitioners' preemption argument on two grounds.

---

[2] Our sister states are divided as to whether interlocutory appeals are available for denials of qualified immunity. Some states have elected to adopt collateral order doctrines aligning with the federal approach. See, e.g., Furlong v. Gardner, 956 P.2d 545, 552 (Colo. 1998); Richardson v. Chevrefils, 552 A.2d 89, 92 (N.H. 1988); Murray v. White, 587 A.2d 975, 977-78 (Vt. 1991); Park County v. Cooney, 845 P.2d 346, 349 (Wyo. 1992). Other states have declined to follow the federal approach, instead relying on existing state appellate procedures for interlocutory appeals. See, e.g., Rivera v. Washington, 784 S.E.2d 775, 779-80 (Ga. 2016); Barrus v. Mont. First Jud. Dist. Ct., 456 P.3d 577, 581-82 (Mont. 2020); Carrillo v. Rostro, 845 P.2d 130, 137-38, 140-41 (N.M. 1992).

23

First, the Court determined that the Idaho appellate rule challenged in that case was neutral. Ibid. It distinguished the setting of Fankell from that of its decision in Felder v. Casey, 487 U.S. 131, 138-50 (1988), in which it held that a non-neutral Wisconsin notice-of-claim statute that barred a 42 U.S.C. § 1983 civil rights cause of action was preempted by federal law. 520 U.S. at 920-21. The Court noted in Fankell that "[u]nlike the notice-of-claim rule at issue in [Felder]," the Idaho appellate rule under review "does not target civil rights claims against the State," but rather "generally permits appeals only of 'judgments, orders and degrees which are final,' without regard to the identity of the party seeking the appeal or the subject matter of the suit." Id. at 918 n.9. The Court observed that in contrast to the Wisconsin notice-of-claim statute considered in Felder, the Idaho appellate rule at issue in Fankell was a neutral procedural rule despite the fact that "it permits interlocutory appeals in certain limited circumstances but denies an appeal here." Ibid. The Court thus made clear that a state rule of appellate procedure that does not target appeals in civil rights actions is neutral for purposes of federal preemption, even if it allows interlocutory appeals in certain settings but not in others. Ibid.

Second, the Supreme Court found it significant in Fankell that the Idaho procedural rule did not determine the outcome of the plaintiff's civil rights

24

action under 42 U.S.C. § 1983. Id. at 920. Distinguishing the Idaho rule from the notice-of-claim statute held to be preempted in Felder, the Court observed:

> Contrary to petitioners' assertions, Idaho's decision not to provide appellate review for the vast majority of interlocutory orders -- including denials of qualified immunity in § 1983 cases -- is not "outcome-determinative" in the sense that we used that term when we held that Wisconsin's notice-of-claim statute could not be applied to defeat a federal civil rights action brought in state courts under § 1983. The failure to comply with the Wisconsin statute in Felder resulted in a judgment dismissing a complaint that would not have been dismissed -- at least not without a judicial determination of the merits of the claim -- if the case had been filed in a federal court.
>
> [Id. at 920 (citing Felder, 487 U.S. at 153).]

As the Court noted, "because the notice-of-claim requirement would 'frequently and predictably produce different outcomes' depending on whether § 1983 claims were brought in state or federal court, it was inconsistent with the federal interest in uniformity." Id. at 920 (quoting Felder, 487 U.S. at 138). In contrast, the Idaho appellate rule -- clearly neutral and not determinative of the outcome -- was not preempted by federal law. Id. at 918, 920.

The Supreme Court thus articulated principles that govern the question of federal law raised in this appeal. First, the states are free to adopt or reject

25

the collateral order doctrine that 28 U.S.C. § 1291 prescribes for federal appeals, even when the action is brought in state court pursuant to 42 U.S.C. § 1983. Fankell, 520 U.S. at 916-17; see also Mitchell, 472 U.S. at 524-27.[3] Second, when a challenged rule of state appellate procedure is neutral and does not determine the outcome of the civil rights action, those factors weigh heavily against federal preemption. Fankell, 520 U.S. at 918-23.

Guided by those principles, we reject defendants' contention that federal law mandates an appeal as of right from a legal determination rejecting qualified immunity.

First, we do not agree with defendants that it is anomalous to treat orders denying qualified immunity in NJCRA cases as interlocutory in light of the final and appealable status of such orders pursuant to the collateral order doctrine in civil rights cases brought in federal court under 42 U.S.C. § 1983. A state may adopt or reject the collateral order doctrine even in actions brought in state court under 42 U.S.C. § 1983, Fankell, 520 U.S. at 916-23, and is clearly free to adopt or reject that doctrine in state court actions premised on state civil rights statutes such as the NJCRA.

---

[3] Defendants' reliance on Furlong is misplaced. 956 P.2d at 545. The Colorado Supreme Court's decision to apply the collateral order doctrine in the action under 42 U.S.C. § 1983 at issue there, id. at 550-52, does not mandate that we adopt the federal approach in actions brought in New Jersey courts under 42 U.S.C. § 1983 or in an NJCRA action such as this case.

In our view, applying the collateral order doctrine to NJCRA claims would engender substantial delay in the resolution of civil rights litigation, encourage piecemeal litigation, and undermine judicial economy. We view our current appellate procedure to effectively balance the interests of the parties and promote judicial economy in NJCRA actions. We decline to adopt the collateral order doctrine for such claims.

We also disagree with defendants' contention that Rule 2:2-3(a), as applied to this appeal, is preempted by federal law. First, Rule 2:2-3(a) is clearly a neutral state procedural rule. With a narrow exception for "such cases as are provided by law," Rule 2:2-3(a)(3), the Rule generally prescribes a finality requirement for appeals as of right. Like the Idaho procedural rule reviewed in Fankell, Rule 2:2-3(a) does not target New Jersey civil rights claims brought under the NJCRA, federal civil rights claims brought under 42 U.S.C. § 1983, or any other discrete category of actions. See Fankell, 520 U.S. at 918 n.9. As the Supreme Court observed in Fankell, a procedural rule can be neutral for purposes of preemption analysis notwithstanding the fact that it "permits interlocutory appeals in certain limited circumstances but denies an appeal" of an order denying qualified immunity, as does Rule 2:2-3(a). Ibid. The court rule challenged in this case is neutral for purposes of preemption analysis.

27

Second, Rule 2:2-3(a) does not determine the outcome of this appeal, let alone raise the specter of inconsistent dispositions of civil rights claims in state and federal court. See Fankell, 520 U.S. at 921. The Rule does nothing more than affect the procedure for and timing of the defendants' appeal of the trial court's order denying qualified immunity, which is subject to discretionary appellate review under Rule 2:2-4 and to an appeal as of right after a final judgment under Rule 2:2-3(a). Rule 2:2-3(a) clearly does not "predictably alter[] the outcome of [Section] 1983 claims depending solely on whether they are brought in state or federal court." See Felder, 487 U.S. at 153; see also Fankell, 520 U.S. at 920. It is instead a neutral procedural rule that is not outcome-determinative and is not preempted by federal law. Fankell, 520 U.S. at 918-21.

We reiterate that the Appellate Division has the authority to grant interlocutory review in the interest of justice, Rule 2:2-4, and that the appellate court can and should review qualified immunity decisions on an expedited basis where parties seeking to appeal demonstrate a "meritorious basis" for such review, GMAC, 205 N.J. at 585.[4]

_____

[4] Because of our disposition in this matter, we do not reach defendants' contention that if the trial court's denial of summary judgment as to qualified immunity is subject to appeal as of right, the City of Newark is also entitled to interlocutory review of the court's denial of summary judgment as to plaintiff's negligence claim against the City.

28

IV.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.